In re PETTIBONE CORP., et al., Debtors.

PETTIBONE CORP., et al., Plaintiffs,

v.

Gary BAKER, Defendant.

PETTIBONE CORP., et al., Plaintiffs,

v.

Carl EASLEY, et al., Defendants.

PETTIBONE, CORP., et al., Plaintiffs,

v.

Edward F. HARRIS, et al., Defendants.

PETTIBONE, CORP., et al., Plaintiffs,

v.

Kenneth WHITE, et al., Defendants.

Bankruptcy Nos. 86 B 1563–86 B 1571. Adv. Nos. 89 A 0381, 89 A 0383, 89 A 0387 and 89 A 0382.

United States Bankruptcy Court, N.D. Illinois, E.D.

Feb. 7, 1990.

See the discussion below.

James J. Hickey, Segal, McCambridge, Singer & Mahoney, Ltd., Chicago, Ill., for Allied Corp.

Martin N. Fealk, Provizer, Lichtenstein, Pearlman & Phillips, P.C., Southfield, Mich., Robert D. Kolar, Robert D. Kolar & Associates, Chicago, Ill., for Granite State Ins. Co.

David B. Lowe, Winston & Strawn, Chicago, Ill., for debtor.

James C. LaForge, Chadbourne & Parke, New York City, Marilyn I. Kosin, Towbin & Zazove, Ltd., Chicago, Ill., for Rockwell Intern. Corp.

Gloria E. Block, Chicago, Ill., for James & Jeannie Carter.

Ronald L. Futterman, Hartunian, Futterman & Howard, Chicago, Ill., for the PL Committee.

John H. Ward, Much Shelist Freed Denenberg Ament & Eiger, P.C., Chicago, Ill., for Unsecured Creditors Committee.

## MEMORANDUM OPINION ON MOTIONS FOR DEFAULT JUDGMENT, SUMMARY JUDGMENT, AND RELIEF UNDER 11 U.S.C. § 362(d)

### AMENDED AND REISSUED FEBRUARY 7, 1990

JACK B. SCHMETTERER, Bankruptcy Judge.

In these four Adversary actions, Pettibone seeks a declaration that the state court personal injury suits filed against it by the Defendants during Pettibone's reorganization are null and void and also seeks an injunction enjoining the continuation or refiling of each action. The four personal injury suits at issue were filed without leave of this Court in Defendants' local state and federal courts after Pettibone had filed its petition here under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

These four adversary actions are now before the Court on motions of Plaintiff–Debtor, Pettibone Corp., for default judgment against Defendants, Gary Baker, and for summary judgment against Defendants Carl Easley, et al., Edward F. Harris, et al., and Kenneth White, et al., and the cross-motions of Easley and Harris for summary judgment. Easley, Harris and White have also requested relief under 11 U.S.C. § 362(d) for annulment of the stay imposed upon all actions against Pettibone during the pendency of its reorganization.

The four cases are discussed in this single opinion, as they deal with common issues of law and similar facts. Assorted briefs on the motions and statements of facts under Local District Rule 12(l) and (m) have been submitted by Pettibone and the Easley, Harris and White Defendants.

For reasons stated below, Pettibone's motions in the four cases are denied and the defense motions for summary judgment are also denied. However, this Court will enter orders in each case which annul for each Defendants the stay imposed in connection with Pettibone's reorganization. The pending actions of Defendants against Pettibone are therefore to proceed in the courts in which they were filed.

### PROCEDURAL BACKGROUND

Pettibone filed its Chapter 11 Petition in this Court on January 31, 1986. Under 11 U.S.C. § 362(a), Pettibone was immediately protected by automatic stay against law suits being filed against it during pendency of its reorganization. After Pettibone had filed its Petition, all of the Defendants filed their respective personal injury suits for injuries alleged to have occurred during 1984 and 1985. The basis of the suits are injuries allegedly suffered from equipment manufactured by Pettibone. Pettibone does not contend that any of the Defendants commenced their actions against Pettibone in willful or knowing violation of the automatic stay. All four personal injury suits were commenced within the individually applicable state law limitations period for personal injury suits.[1]

---

1. Baker was injured July 8, 1985 and filed suit September 12, 1986, within the two-year period of limitations under Ill.Rev.Stat. ch. 110

¶ 13–202. Easley was injured July 25, 1985 and filed suit July 22, 1988, within the three-year period of limitations under Mich.Comp.Laws

After service on Pettibone of summonses and complaints in these actions, each Defendants was notified by Pettibone of the pending reorganization. They were all advised that their suits could not proceed, as Pettibone was protected by the automatic stay. All Defendants have since filed timely claims as creditors in the Pettibone bankruptcy, based upon their respective unliquidated personal injury claims.

For purposes of the Pettibone reorganization and associated Plan, all four Defendants were scheduled in the "PL Claimants" class of creditors. This class is composed of people who had timely-filed claims against Pettibone, based upon allegations of personal injury under products liability causes of action for which neither liability nor damages had been determined. All Defendants were solicited for approval of the reorganization plan proposed by Pettibone as part of the "PL Claimants" class and were included as members of that class in the materials filed in connection with confirmation of the final plan.[2] All four Defendants also received notice from this Court that Pettibone's reorganization Plan was confirmed on December 9, 1988. By reading the notice, together with the plan they had previously received, the Defendants could ascertain that the automatic stay would be lifted, as indeed it was, on December 28, 1988. The order confirming the plan authorized the "PL Claimants" to prosecute their pending actions as identified in the schedules annexed to the reorganization plan or as might be authorized by order of this Court.

Pursuant to § 108(c) of the Bankruptcy Code, 11 U.S.C. § 108(c), when the automatic stay was lifted, time for filing actions which could not be filed while the stay was in effect began to run. Under § 108(c)(2), the minimum time allowed for filing such actions is 30 days, unless state law gives a longer period. Pettibone as-

serts that because the respective state statutes of limitations applicable to the four suits expired while the stay was in effect and because the Defendants did not refile their personal injury actions within 30 days of the day they were given notice that the automatic stay was lifted, they are barred by limitations and should be enjoined from litigating their claims. This argument assumes that Defendants' original case filings were void, because they were filed while the automatic stay was in effect. In short, it is argued that the original filings were a nullity and refilings are now too late because state limitation periods and also the 30 day grace period under § 108(c)(2) have all run.

Defendants contend that suits filed during the automatic stay period were not void but merely voidable. They argue that only if Pettibone had requested the state courts or bankruptcy court to find the actions void, or if Pettibone had moved to have them dismissed while the stay was in effect, would these suits be void.

Alternatively, Defendants assert that Pettibone's conduct following lifting of the stay was intended to lull the Defendants into believing they needed to take no further action to protect their claims. They say that by taking the various acts complained of, Pettibone is estopped from claiming that the Defendants's suits were barred for failure to be refiled before the § 108(c)(2) 30–day post-stay limitations amnesty period expired. The particular conduct raised by Defendants to support their estoppel arguments were letters they received from Pettibone's counsel, after the Court's notification of confirmation of the plan, requesting 45 to 60 day extensions to respond to Defendants suits. In one case, a Defendant cites Pettibone's removal of the case to U.S. District Court from the state court in which it was pending. De-

---

Ann. § 600.5805. Harris was injured August 7, 1985 and filed suit June 11, 1986, within the one-year period of limitations under La.Civ. Code Ann. Art. 3492. White was injured November 19, 1984 and filed suit June 4, 1986, within the three-year period of limitations under Mich.Comp.Laws Ann. § 600.5805.

2. Defendant Easley is not named in the schedules annexed to the reorganization plan, as his claim was filed after the schedules were prepared. However, this court allowed his late filed claim and, thereby, by order dated November 25, 1988, included him in the "PL Claimants" class.

fendants assert that Pettibone's requests, coupled with its reorganization plan documents and this Court's confirmation order, could only have lead Defendants to believe their previously filed actions would be resumed from the point at which they had been stayed.

## SUMMARY JUDGMENT STANDARDS

Under Rule 56(c) F.R.Civ.P., summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986).

The standard for granting summary judgment mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a). *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553; *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511. The primary difference between the two motions is procedural; summary judgment motions are usually made before trial and decided on documentary evidence, while directed verdict motions are made at trial and decided on evidence that has been admitted. *Anderson*, 477 U.S. at 251, 106 S.Ct. at 2511–12. In essence, however, the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require trial or whether one party must prevail as a matter of law. *Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2511–12.

In these proceedings there is no dispute of material fact between the parties. Those undisputed facts are set forth in the discussion that follows. However, it is not appropriate as a matter of law for summary judgment to be entered for plaintiff or any of the moving Defendants based upon application of law to the facts as they are found in the materials presented in support and opposition to the summary judgment motions, and in the record of proceedings of the related bankruptcy cases.

## DISCUSSION

One of the basic privileges afforded a Debtor who has filed a petition in bankruptcy is the protection of the automatic stay provision of 11 U.S.C. § 362. *Midatlantic National Bank v. New Jersey Department of Environmental Protection*, 474 U.S. 494, 503, 106 S.Ct. 755, 760, 88 L.Ed.2d 859 (1986). Section 362 provides that no actions may be continued or commenced against the Debtor unless the creditor attempting to bring or continue the action first obtains permission from the bankruptcy court. *Association of St. Croix Condominium Owners v. St. Croix Hotel Corp.*, 682 F.2d 446 (3rd Cir.1982). Merely because a Plaintiff has obtained proper service and process does not settle the question as to whether the suit filed during the stay period is valid. While courts agree that actions already pending at the time the bankruptcy petition is filed are placed in suspension upon imposition of the stay, they are divided as to whether suits filed while a stay is in effect are void *ab initio* as in *Richard v. City of Chicago*, 80 B.R. 451, 453 (N.D.Ill.1987), and *In re Shamblin*, 878 F.2d 324 (9th Cir.1989); or merely voidable upon request of the debtor, *In re Oliver*, 38 B.R. 245, 248 (Bkrtcy.D. Minn.1984); *Sikes v. Global Marine, Inc.*, 881 F.2d 176 (5th Cir.1989). The Seventh Circuit has held such filing to be void in a case involving the statutory precursor to 11 U.S.C. § 362. *Matthews v. Rosene*, 739 F.2d 249, 251 (7th Cir.1984).

Given the divergence of opinion between the courts, it is not surprising that attorneys who practice in areas of law other than bankruptcy experience confusion as to what measures are required to maintain their client's interest in a debtor's estate. However, bankruptcy law, and particularly the § 362 stay, is not designed to protect the practitioner. It is rather to protect the debtor while it gets its financial affairs in order. *Matter of Baldwin–United Corp.*, 48 B.R. 901, 902 (Bkrtcy.S.D.Ohio 1985).

Therefore, it is most logical to find that the automatic stay protects the debtor absolutely, so that actions filed while it is in place are void and without legal effect. This position has been adopted by a majority of the courts and has survived the transition from cases decided under the old Bankruptcy Act to those decided under the new Code. *See, Kalb v. Feuerstein,* 308 U.S. 433, 438, 60 S.Ct. 343, 345–46, 84 L.Ed. 370 (1940); *Borg–Warner Acceptance Corp. v. Hall,* 685 F.2d 1306, 1308 (11th Cir.1982); *In re Advent Corp.,* 24 B.R. 612, 614 (1st Cir. BAP 1982); *In re Shamblin,* 878 F.2d 324 (9th Cir.1989); and *In re Hormovitis,* 57 B.R. 471, 475 (Bkrtcy.N.D. Ill.1985). This Court holds to that view.

Defendants' argument (that actions filed against a debtor while the stay is in effect are merely voidable and become void only upon debtor's request) is contrary to intent of the bankruptcy laws to relieve debtor from defending against such actions and thereby allow all energy and resources to be devoted to reorganization. The purpose of the stay, to maintain the *status quo* with respect to debtor's property, would be negated if a debtor was required to take action to effectuate a result already guaranteed to it by § 362.

Once the stay is modified, terminates or expires pursuant to any section of the Bankruptcy Code, the state law statutes of limitations relating to actions against the debtor once again become meaningful. Whether or not limitations periods include the time the stay was in effect is dependent on the existence of specialized suspension statutes found in applicable federal or state laws. *In re Baird,* 63 B.R. 60, 63 (Bkrtcy.W.D.Ky.1986). If no specialized suspension statute exists which tolls limitations during pendency of the automatic stay and an action would otherwise be barred by limitations, then bankruptcy law supplies a short filing period under § 108(c)(2). Under that provision, 30 days is established as the period of time during which suits which could not be filed while the stay was in effect may be filed without being barred by expiration of a state law limitations period that expired while the stay was in effect. The subparts of § 362 make clear that if a limitations period has not expired during the stay of actions, upon lifting of the stay the remainder of that state limitations period applies. However even if state limitations has run, the period for commencing such actions cannot expire less than 30 days from notice that the stay is lifted.

Once the extended period for filing stay-barred actions has expired, under either state law or the § 108(c)(2) 30–day provision, even a party with a timely filed claim in bankruptcy cannot initiate a suit against the debtor. Merely filing a claim in the bankruptcy does not toll the state law limitations period. Moreover, any suit initiated during the pendency of the stay without court authorization will not effectively toll the running of the limitations period, because such acts are nullities under bankruptcy law, and thus can have no legal effect under state law.

The only exception to this result may occur when a court exercises its powers under 11 U.S.C. § 105 and 362(d). Based upon special circumstances of a particular case, under 11 U.S.C. § 105, a court has authority to issue an order necessary to carry out the provisions of the Bankruptcy Code or to enforce or implement its prior orders. Coupled with 11 U.S.C. § 362(d), which allows retroactive relief from a stay by an order annulling the stay for cause, *In re Albany Partners, Ltd.,* 749 F.2d 670, 675 (11th Cir.1984), an order may be entered to breathe life into a void action commenced during the pendency of a reorganization by annulling the stay with respect to particular claimants who unknowingly violated the stay by filing suit against a debtor.

The effect of annulment under § 362(d) is to render the stay itself a nullity, as if it had never existed with respect to designated parties and their actions, so that suits filed against the debtor are deemed not to have violated the stay and are effective as of the date they were initially filed. *In re Chirillo,* 84 B.R. 120, 123 (Bkrtcy.N. D.Ill.1988) and *Raikes v. Langford,* 701 S.W.2d 142, 145 (Ky.App.1986).

Of course, this action should only be taken in exceptional cases upon careful consideration of the facts and actions taken by the parties. This consideration must necessarily include the acts of the bankruptcy court in connection with its treatment of the parties and the court's own actions and orders during the pendency of the reorganization. If annulment were to be granted routinely, the purpose of the stay to protect the debtor would be abrogated by providing creditors with incentive to continue to file suit against debtors in the hope that the court will automatically validate the action upon lifting of the stay. *Albany Partners*, 749 F.2d at 675. However, this Court also "has the duty to protect the integrity of its proceedings," *Hormovitis*, 57 B.R. at 474.

## DISPOSITION OF THE BAKER CASE

The above analysis of the effect of the automatic stay on statutes of limitations will first be applied to the facts of the action against Defendants Gary Baker.

■ Baker's personal injury action was filed against Pettibone in an Illinois state court. Baker sustained his injury in Illinois on July 8, 1985. Accordingly, the relevant two year Illinois limitations period would have expired on July 8, 1987. When Mr. Baker was notified by this Court of the confirmation of Pettibone's reorganization plan and apprised that the stay was lifted as a term of the reorganization, he and his counsel were free to re-institute the suit against Pettibone which the automatic stay had previously barred. His injury counsel has not represented him before this Court, and Baker has not obtained other counsel to file anything opposing the Pettibone suit.

According to § 108(c)(1), the period of time following lifting of the stay during which Baker was and is allowed to bring his action is controlled by a specialized Illinois suspension statute. Ill.Rev.Stat. ch. 110 ¶ 13–216 states:

When the commencement of an action is stayed by injunction, order of a court, or statutory prohibition, the time of the continuance of the injunction or prohibition is not part of the time limited for the commencement of the action.

By operation of this statute, running of the two-year period of time from date of Baker's injury was suspended during the pendency of Pettibone's reorganization stay. The Illinois Supreme Court has ruled that such is the effect on the Illinois statute of limitations. *Garbe Iron Works, Inc. v. Priester*, 99 Ill.2d 84, 75 Ill.Dec. 428, 457 N.E.2d 422 (1983).[3] Accordingly, the limitations period ran from the date of Baker's injury, July 8, 1985, until the date Pettibone filed its Chapter 11 petition, January 31, 1986. Approximately six and a half months accrued against the limitations period before the filing of the Pettibone petition. Therefore, approximately one year and five and a half months remained on the limitations period when Baker received notification of when the stay would be lifted.

As a properly filed claimant in Pettibone's reorganization, Baker therefore remains capable under Illinois law of re-initiating his suit against Pettibone until June, 1990. In the interest of justice and judicial economy, this Court will exercise its powers *sue sponte* under 11 U.S.C. § 105 and § 362(d) to annul the stay with respect to Baker. This action is taken to prevent an abuse of process and to allow an expedient resolution of the state court liability suit, and in consideration of the need for conserving the resources of the judicial system. This action will avoid any necessity that the action filed by Baker in 1986 be dismissed and another action be filed in its stead, an action that would merely create new expense for the litigators and administrative burdens for the state court without any just purpose being served.

## DISPOSITION OF THE EASLEY, HARRIS AND WHITE CASES

The analysis set forth above regarding the effect of the automatic stay on statutes

---

**3.** It must be observed that the Illinois Supreme Court did not cite or discuss § 13–216. The opinion could be read to be a construction of 11 U.S.C. § 108(c) as tolling the Illinois statute of limitations, an interpretation at variance with federal court authority. However, § 13–216 by its terms has the very effect that the Supreme Court found by other reasoning.

of limitations is again applied to determine the disposition of Pettibone's adversary actions against the Easley, Harris and White Defendants.

Unlike the Baker case, the states in which these three other suits were filed and where the causes of action arose are Louisiana and Michigan. Those states have no specialized suspension statutes similar to that of Illinois. Therefore, the 30–day period under § 108(c)(2) would normally apply to the recommencement of actions by these Defendants against Pettibone from the date of notification of lifting of the stay. Because these Defendants did not refile during that 30–day grace period, and the suits they attempted to file against Pettibone during the pendency of its reorganization were a nullity, all actions which would allow them to liquidate their claims by taking them to judgment would normally be barred. This would be a harsh result but one mandated by the interface of bankruptcy laws and state law previously discussed.

■ In this case, the due process requirements of notice to creditors regarding protection of their property interests in the Debtor's estate were met by notices to claimants regarding the existence of the automatic stay, the proposed plans of reorganization, and the notice of confirmation of the plan. No further instruction to creditors on protection of their claims is required by the Bankruptcy Code or the U.S. Constitution.

It is the responsibility of a creditor to secure counsel to protect its claim once having notice that a reorganization or bankruptcy has impact upon a pending state court suit. Counsel, for their part, must be candid with their clients and with themselves about their ability to "lawyer" a case related to a defendant in a bankruptcy.

Defendants argue that it would be inequitable for a debtor to use the bankruptcy law's stay offensively to deprive otherwise legitimate creditors of their rights. That is precisely what the law allows a debtor to do. In the Bankruptcy Code the Congress has determined the balance of fairness between creditor and debtor rights, and it is not for this Court to revise the Code. Indeed, under the Code it would be inequitable to require debtor to be responsible for tutoring counsel for claimants as to how their rights are to be protected or to require debtor to give such counsel step-by-step instructions on how claims or suits are to be maintained. If it may be said that bankruptcy is a trap for the unwary, that is no different than recognizing that careful and knowledgeable lawyering is required in most fields of law, and that law often holds traps for the unwary.

■ Debtors may certainly be estopped by certain types of conduct from asserting state court limitations defenses in suits filed by creditors. See e.g. Annotation "Estoppel to rely on statute of limitations," 24 ALR 2d 1413 et. seq. However, the Defendants here have not shown more than an exercise by Debtors of their rights, not any acts promising settlement or other acts to induce Defendants to forgo timely litigation. The Defendants who moved for summary judgment on their estoppel theory have fallen far short of demonstrating such estoppel.

■ To avoid the limitations bar of their actions, Defendants in these three cases have also requested this Court to exercise its authority under § 362(d) to annul the automatic stay imposed during pendency of the Pettibone reorganization. If the Court grants the requested annulments, Defendants can pursue their actions previously filed in violation of the stay as if the stay had never existed. In response to Defendants' requests for this extraordinary relief, the Court has undertaken careful review of its prior orders and understanding with respect to this particular reorganization. *In re Opelika Manufacturing Corp.*, 66 B.R. 444, 449 (Bkrtcy.N.D.Ill. 1986) (totality of circumstances must be considered when making decision under 11 U.S.C. § 362(d).) The Court's authority under § 362(d) should be employed only narrowly and in compelling circumstances. Bad faith (and certainly intentional violation of the stay) would alone be grounds to deny relief under that provision. *In re*

*Shamblin,* 878 F.2d 324, 327 (1989), citing *Matthews v. Rosene, supra.*

■ Pettibone argues that these Defendants who did not timely move for relief from the automatic stay so they could prosecute their actions should now be barred from refreshing those suits through an annulment order. That argument is not persuasive when the situation specific to this Debtor is considered. This Court routinely denied requests by "PL Claimants" to lift the stay protecting Pettibone while the Debtor companies were in reorganization. The Debtors' reorganization, because of coverage disputes among various insurance carriers, was particularly vulnerable to the many pending and threatened personal injury cases. Accordingly, almost all requests to lift stay to permit injury suits were denied[4] so that Pettibone and its carriers could be given an opportunity to develop a plan for dealing with the liability on such claims, while freed from the burdens of actively defending the actions.

In retrospect, this procedure was quite effective. It allowed Pettibone and its insurers to negotiate step-down agreements which will afford all claimants who prove their cases against the Debtor the greatest possible measure of recovery, considering the Debtor's limited financial resources and insurance coverage. If the Court had not turned away claimants requesting relief from the stay, it is likely only the first few to procure judgments would have found sufficient assets to satisfy them and it is most unlikely that Debtor would have been able to reorganize effectively. Pettibone's argument that those claimants who did not move to modify the stay should now be barred for lack of diligence is inappropriate, since Pettibone consistently defended and benefited from the stay. Moreover, the Easley Defendants did in fact move for modification of the stay, but were denied such relief in keeping with the practice of this Court to protect the fragile reorganization process.

With this background, the Court next examines the language of its order notifying the Defendants that Pettibone's reorganization plan had been confirmed.

It is firmly established that the court has broad discretion in fashioning orders to enable equitable reorganization of a debtor. *Richard v. City of Chicago,* 80 B.R. 451 at 454 (N.D.Ill.1987). In approving the confirmed Plan for Pettibone's reorganization, this Court clearly understood and intended that all claimants listed in Pettibone's schedules or later approved as "PL Claimants" would be free to proceed with their actions without "stay violation" objections from Pettibone or its insurers. It was the understanding and intent of this Court upon approving confirmation that all suits previously filed were to continue upon lifting of the stay, and the confirmation order is still read to have that effect and intent.

Accordingly, in the interest of preserving the intent and effect of this Court's confirmation order, the stay will be annulled with respect to all Defendants in the Easley, Harris and White cases. By so doing, this Court achieves the same result approved of by the Fifth Circuit in *Sikes v. Global Marine Inc.,* 881 F.2d 176 (5th Cir.1989), *reh. denied* 888 F.2d 1388 (5th Cir.1989). That case affirmed a bankruptcy court that had allowed a personal injury suit filed in violation of a stay to be reinstated by annulment of the stay, rather than requiring the plaintiff to file "more papers with an already burdened court" or have the plaintiff punished by "adverse effects flowing from any imprecision in the language of the order." 881 F.2d at 180.[5]

---

4. The court notes one exception was made which allowed a suit to proceed once Pettibone had determined that insurance coverage was clearly existent and sufficient to cover the liability and defense without impairing the remainder of its estate.

5. Reasoning in *Sikes* is difficult to understand. Immediately after stating that complaints filed against a debtor post-petition are voidable, the

Fifth Circuit discusses the fact that § 362(d) authorizes a bankruptcy court to grant relief from the automatic stay retroactively, and then also concludes that in the facts of the case before it, the bankruptcy court had "validated" the filing of the original complaint. The latter propositions were unnecessary if "voidable" is given its common meaning. If plaintiff's complaint against debtor was voidable, not void, it should have been valid until the debtor took

The result reached herein does not imply that this Court has accepted Defendants' assertion that a debtor cannot challenge a claim once it has solicited and received a vote from the claim holder for the debtor's proposed reorganization plan. To the contrary, a debtor remains free to challenge such claims, as only properly proven claims should be allowed to share in the scarce resources of the debtor's estate.

Further, the Court's decision should not be interpreted to allow claimants to escape the technical requirements essential to the continued effectiveness of the bankruptcy system, nor to require debtors to provide their creditors with instructions on how to maintain their claims. The level of expertise of the creditor's attorneys in dealing with the specialized area of bankruptcy law has not been factored into this Court's analysis. Attorneys are cautioned not to believe this would likely be a consideration of this or other courts faced with review of other cases or other facts.

## CONCLUSION

In summary, the Court holds that all injury suits by Defendants to the instant Adversary cases were nullities when filed without bankruptcy court authority while the automatic stay imposed by 11 U.S.C. § 362 was in effect. Creditors notified of the pending bankruptcy reorganization of a party in response to their suits and who wish to toll limitations must move the bankruptcy court for relief from the stay. If such relief is denied or not sought, the creditor has the burden to become and remain informed as to what further action is required, and as to how the relevant limitations period is impacted by events occurring during the course of the Debtor's reorganization.

At minimum, the creditor is charged with knowledge of the fact that unless a special-ized state statute operates under 11 U.S.C. § 108(c)(1) to suspend limitations while the automatic stay is in effect, the only period guaranteed to the creditor for initiating suits barred by the stay and for which the limitations period has run is the 30–day minimum allowed under 11 U.S.C. § 108(c)(2).

After the 30–day period has run, only at the discretion of the court which controlled the stay, in exceptional cases and for cause shown, may special relief be granted by cautious application of § 362(d) to annul the stay thereby allowing resurrection of any suit filed while the stay was in effect.

By separate orders, the relief sought by Pettibone in its motions against the Baker, Easley, Harris and White Defendants is denied. Summary judgment sought by the Easley and Harris Defendants is also denied because they are not entitled thereto as a matter of law.

However, the automatic stay imposed upon the filing of Pettibone's Chapter 11 petitions will be annulled with respect to all Defendants. Accordingly, the actions previously filed by Baker, Easley, Harris and White against Pettibone are valid and shall proceed in the courts in which they are now effectively pending.

That being the case, by additional separate orders, all cases will be dismissed as they no longer state grounds for relief.

---

affirmative steps to have it stricken. Since no such steps were apparently taken by the debtor in *Sikes*, the original complaint should have been valid when the stay was lifted. Nullification under § 362(d) is a remedy to address the situation where the original complaint was void. It should have therefore been unnecessary to reach or discuss § 362(d) or for the bankruptcy court to have "validated" the complaint. In short, although *Sikes* says the complaint in issue was voidable, it doesn't follow through with the logical implications of its holding, and in fact, refers to other theories that would be unnecessary if in fact it truly treated the complaint in issue as "voidable".