**PETTIBONE CORPORATION, et al.,**
**Plaintiffs–Appellants,**

v.

**Carl EASLEY, et al.,**
**Defendants–Appellees.**

**Nos. 90–3025 to 90–3028.**

United States Court of Appeals,
Seventh Circuit.

Argued April 19, 1991.

Decided June 13, 1991.

Robert D. Kolar, Kolar & Associates, Chicago, Ill., Donald L. Payton, Kaufman & Payton, Farmington Hills, Mich., for plaintiffs-appellants.

Philip Rice, Belleville, Ill., Paul J. Tellarico, Neblett, Beard & Arsenault, Alexandria, La., R. Duncan MacDonald, MacDonald, Fitzgerald, MacDonald & Simon, Henry M. Hanflik, Flint, Mich., Daniel Hoseman, Chicago, Ill., Jeffrey A. Chimovitz, Jaffe, Snider, Raitt & Heuer, Detroit, Mich., for defendants-appellees.

Before EASTERBROOK, MANION, and KANNE, Circuit Judges.

EASTERBROOK, Circuit Judge.

■ Only a belief that bankruptcy is forever could produce a case such as this. When Pettibone Corporation and its affiliates (collectively Pettibone) filed for bankruptcy, some personal injury cases were pending against it. These were stayed automatically. 11 U.S.C. § 362. During the bankruptcy proceedings other personal injury suits were filed despite § 362. Courts put these new tort cases in stasis. Pettibone's plan of reorganization lists all tort cases, including those filed in violation of the automatic stay, as claims that pass through bankruptcy. Plaintiffs who had filed during the bankruptcy had 30 days after the termination of the stay to re-file their cases with assurance that they could not be deemed untimely. 11 U.S.C. § 108(c)(2). Three cases that had been filed in violation of the automatic stay were not re-filed within the 30 days. Pettibone asked the bankruptcy court to enjoin their prosecution.[†]

Now the only obstacles to the continuation of the tort suits are the statutes of limitations—Michigan's for two cases and Louisiana's for the third. Whether Michigan or Louisiana would treat a case filed in violation of the automatic stay as a nonevent for limitations purposes is a question of state law. No *federal* interest is in play; the bankruptcy court authorized the continued prosecution of these cases when it confirmed the plan of reorganization. Federal law assured the plaintiffs 30 days in which to pick up the baton; if states want to give plaintiffs additional time, that is their business. Some states do—e.g., Illinois, which tolls its statute of limitations during the entire bankruptcy proceeding, Ill.Rev.Stat. ch. 110 ¶ 13–216. No one believes that these states are violating federal law.

[†] Pettibone also asked the court to enjoin prosecution of a fourth suit, filed by Gary Baker in Illinois. Baker has not taken any steps to reactivate his tort suit, and in the district court Baker threw in the towel, stating that he no longer wished to prosecute the personal injury claim. 119 B.R. 603 n. 1 (1990). Baker has not appeared in this court. We agree with the district judge that Pettibone's adversary action against Baker is moot, and we shall discuss it no further.

Anyway, even federal defenses must be presented to the courts in which the claims are pending. Cf. *Franchise Tax Board of California v. Construction Laborers Vacation Trust*, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).

Pettibone approached this in a different manner. It argued that, if the automatic stay makes the filing void, then no suits are pending against it, and any future filings necessarily would be untimely under state law. If, on the other hand, the filings are voidable, then the courts with jurisdiction over the personal injury cases might excuse the plaintiffs' blunders and allow the cases to proceed. Pettibone asked the bankruptcy judge to declare the filings void and enjoin further prosecution of the "nonexistent" suits. The bankruptcy judge, choosing sides in a debate about the effect of the automatic stay, concluded that the filings were void. 110 B.R. 848 (Bankr.N.D.Ill.1990). Compare *Sikes v. Global Marine, Inc.*, 881 F.2d 176, 179 (5th Cir.1989) (voidable), with *Richard v. Chicago*, 80 B.R. 451, 453 (N.D.Ill.1987) (void). Cf. *In re White Motor Corp.*, 65 B.R. 19 (N.D. Ohio 1986) (void), reversed, 863 F.2d 48 (6th Cir.1988) (void, but treated as if voidable) (unpublished opinion). Section 362(f) allows a bankruptcy judge to terminate the automatic stay. Confirmation of Pettibone's plan of reorganization did so. 11 U.S.C. § 362(c). Bankruptcy Judge Schmetterer lifted the stay retroactively (that is, as of a date before either the confirmation of the plan or the filing of the three tort cases). Retroactive abrogation of the stay implied that the tort suits were timely after all, and the bankruptcy judge denied Pettibone's request for relief. The district judge affirmed, 119 B.R. 603 (N.D. Ill.1990). Pettibone's notices of appeal bring the cases here because the captions list all of the parties and the bodies of the notices of appeal show that all of the listed losers are appealing. *Hartford Casualty Insurance Co. v. Borg–Warner Corp.*, 913 F.2d 419, 422–24 (7th Cir.1990).

■ Pettibone insists that suits filed during the automatic stay are void and that the bankruptcy judge abused his discretion in modifying the stay retroactively. The plaintiffs in the personal injury suits reply (a) that the filings are voidable, (b) that the complaints satisfied Michigan and Louisiana law by giving Pettibone actual notice of the claims even if federal law nullifies the *filing* of the complaints in state court, and (c) that it would be improvident for a bankruptcy court in the Seventh Circuit to block them from litigating when the Fifth and Sixth Circuits—the courts of appeals with jurisdiction over the tort suits (all three have been removed to federal court) —deem violations of the automatic stay voidable in name or in effect, see *Sikes* and *White Motor*, and so would allow the personal injury cases to proceed. We do not arbitrate this dispute, for we conclude that the bankruptcy judge lacked jurisdiction. Pettibone's arguments must be presented to the courts with jurisdiction of the tort cases.

■ Once the bankruptcy court confirms a plan of reorganization, the debtor may go about its business without further supervision or approval. The firm also is without the *protection* of the bankruptcy court. It may not come running to the bankruptcy judge every time something unpleasant happens. *In re Xonics, Inc.*, 813 F.2d 127, 130–32 (7th Cir.1987); *In re Chicago, Rock Island & Pacific R.R.*, 794 F.2d 1182, 1186–87 (7th Cir.1986). See also *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984); *Goodman v. Phillip R. Curtis Enterprises, Inc.*, 809 F.2d 228, 232–33 (4th Cir.1987); *National City Bank v. Coopers & Lybrand*, 802 F.2d 990, 994 (8th Cir. 1986); *In re Gardner*, 913 F.2d 1515, 1518–19 (10th Cir.1990). Formerly a ward of the court, the debtor is emancipated by the plan of reorganization. A firm that has emerged from bankruptcy is just like any other defendant in a tort case: it must protect its interests in the way provided by the applicable non-bankruptcy law, here by pleading the statute of limitations in the pending cases.

Bankruptcy courts have jurisdiction under 28 U.S.C. § 157(c)(1) to hear claims "related to" the reorganization. *Xonics* holds that a dispute is related to the bank-

ruptcy when "it affects the amount of property available for distribution or the allocation of property among creditors." 813 F.2d at 131. Pettibone's success in fending off tort litigation might affect the allocation of property among creditors. The plan of reorganization assures personal injury claimants the proceeds of Pettibone's insurance; if payments exhaust the policy limits, the personal injury claimants become general unsecured creditors for the residue. Paragraph 6.08 of the plan creates a reserve for disputed claims, to be paid to unsecured creditors as controversies are resolved and claims are paid or released. If the aggregate of all tort claims exhausts the insurance, scuttling these three would increase the sums available for distribution to general creditors—including other tort creditors. Perhaps it is enough that Pettibone does not contend that exhaustion of insurance is likely. Unless the tort awards exhaust the insurance, the outcomes do not affect other creditors.

■ At all events, § 157(c)(1) does not authorize bankruptcy judges to dispatch tort suits. *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), holds that Article III of the Constitution bars bankruptcy judges who lack life tenure from deciding tort claims founded on state law. In the wake of *Marathon*, Congress required bankruptcy judges to transfer personal injury claims to district judges, as Pettibone's plan of reorganization did. 28 U.S.C. § 157(b)(5). Bankruptcy judges cannot try selected defenses in these tort cases—as Pettibone asked the bankruptcy judge to do with its limitations defenses—on the authority of § 157(c)(1). The whole case, including defenses of all kinds, goes off to the district judge or the state court.

Section 1142(b) of the 1978 Code, 11 U.S.C. § 1142(b), is the only other potential source of jurisdiction. This statute authorizes the bankruptcy court to "direct the debtor and any other necessary party ... to perform any other act ... that is necessary for the consummation of the plan." Enjoining a tort suit expressly authorized

by the plan is hardly "necessary for the consummation of the plan", however. Pettibone did not ask the bankruptcy judge to enforce the automatic stay, which had expired. There was nothing to enforce. If we understand § 1142(b) as vesting in the bankruptcy judge a more general power to modify its orders, cf. 11 U.S.C. § 350(b), Pettibone fares no better. Pettibone did not want the bankruptcy judge to modify any order, and it protests the bankruptcy judge's decision to release the stay retroactively.

Like Pettibone, we are troubled by the idea that a judge can "modify" something that has expired. Even legal fictions have their limits. The stay achieved its purpose and came to a natural end. Bankruptcy palliates creditors' problem of collective action, forcing disputes into a single forum and preventing the dismemberment of a firm that still may be more valuable alive than dead. The automatic stay is the instrument that accomplishes the centralization of claims. See *United States v. Inslaw, Inc.*, 932 F.2d 1467, 1473 (D.C.Cir. 1991). The stay worked perfectly in Pettibone's case: all creditors, including tort claimants, came to the bankruptcy forum. Now that the plan of reorganization has been confirmed, and the tort claimants remitted to separate courts, a dispute about "retroactive" modification has the air of the scholastic about it.

While the stay was outstanding, the bankruptcy judge could have modified or lifted it, perhaps backdating the effect of that decision. Once the judge authorized the prosecution of the personal injury actions, however, all that remained was a debate about the consequences of filing the tort action while the stay was outstanding. Disputes about the effect of a decision in one case on the prosecution of another are for the judge presiding in the second case. In the law of preclusion the second court normally determines the effects of the first judge's order. E.g., *Pozsgay v. Southwestern Illinois Health Facilities, Inc.*, 924 F.2d 677 (7th Cir.1991); Charles Alan Wright & Arthur R. Miller, & Edward H. Cooper, 18 *Federal Practice and Procedure* §§ 4405, 4413 (1981). Section 1142(b)

does not permit the bankruptcy judge to instruct the judge hearing the tort case how to understand the effect of an expired automatic stay on a complaint filed in state court.

The bankruptcy judge lacked jurisdiction to resolve the statute of limitations defenses, which Pettibone must present to the proper courts. The judgments under review in Nos. 90–3026, 90–3027, and 90–3028 are accordingly vacated, and the cases are remanded with instructions to dismiss for want of jurisdiction. The judgment under review in No. 90–3025 is vacated, and the case is remanded with instructions to dismiss that adversary complaint as moot.