**Edward F. HARRIS, et al.,**

**v.**

**PETTIBONE CORPORATION, et al.**

**Civ. A. No. 86–389–B.**

United States District Court,
M.D. Louisiana.

June 25, 1992.

Richard J. Arsenault, Neblett, Beard & Arsenault, Alexandria, La., for plaintiffs.

Edward H. Arnold, New Orleans, La., for defendants.

RULING ON PETTIBONE CORPORATION'S MOTION TO DISMISS ON THE BASIS OF PRESCRIPTION

POLOZOLA, District Judge.

The interesting issue presented by this motion is whether a suit filed in violation of an automatic stay issued by a United States Bankruptcy Court interrupts liberative prescription under Louisiana law.[1]

---

1. The Court has subject matter jurisdiction pur-    suant to 28 U.S.C. § 1332.

The background of this case presents a unique factual scenario which has seen this case travel through one bankruptcy court, two federal district courts and the Seventh Circuit Court of Appeals.[2] The winding road that began over six years ago in this Court has found its way back to the Middle District of Louisiana. Along the way, the plaintiffs have had their case stayed, dismissed and a stay vacated within the meaning of the Bankruptcy Code in their attempt to pursue their claims against Pettibone Corporation ("Pettibone"). Pettibone now alleges that plaintiffs' claims should be dismissed because plaintiffs failed to interrupt prescription when they filed suit while the automatic stay was in effect during Pettibone's Chapter 11 reorganization proceeding.

Edward F. Harris claims that he was injured on or about August 7, 1985, while operating a crane manufactured by Pettibone.[3] The wife and children of Edward F. Harris have also filed a claim for loss of consortium. On January 31, 1986, Pettibone filed a petition under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Illinois. The filing of the bankruptcy petition by Pettibone automatically stayed the commencement of any action pursuant to 11 U.S.C. § 362. Without obtaining relief from the automatic stay from the bankruptcy court, plaintiffs filed a civil action in this Court on June 11, 1986. On July 10, 1986, this Court, after being advised of the pending bankruptcy proceeding, ordered the Clerk of Court to administratively close this suit without prejudice to the right of the parties to reopen the proceedings. The order issued by this Court was not a dismissal or disposition of the tort action but merely served to recognize the stay imposed on the action by the United States Bankruptcy Court for the Northern District of Illinois.

Plaintiffs timely filed a claim in the bankruptcy court as creditors of Pettibone based upon their respective unliquidated personal injury claims. On December 9, 1988, plaintiffs received notice from the bankruptcy court that Pettibone's reorganization plan had been confirmed. The confirmed plan authorized plaintiffs to prosecute their pending tort actions in the Middle District of Louisiana. In the order of confirmation, plaintiffs were further advised that the automatic stay would be lifted on December 28, 1988.

Under 11 U.S.C. § 108(c), the plaintiffs had 30 days from the time the automatic stay was lifted to refile their tort suit, which defendant contends was void since it was filed in violation of the automatic stay. Plaintiffs did not refile their suit. Pettibone contends that the suit filed in violation of the automatic stay order is void, rather than merely voidable, and that plaintiffs' claims "represcribed" after the 30 day period.

Pettibone's argument was initially made in the United States Bankruptcy Court for the Northern District of Illinois in a suit for a declaratory judgment which sought to enjoin plaintiffs from further pursuing their tort suit. The bankruptcy court ruled that plaintiffs' post petition suit was null and void because it was filed without bankruptcy authority while the automatic stay imposed by 11 U.S.C. § 362 was in effect.[4] However, the court decided to retroactively annul the automatic stay imposed upon plaintiffs pursuant to 11 U.S.C. § 362(d). The bankruptcy court reasoned that "[i]t was the understanding and intent of this Court upon approving confirmation that all suits previously filed were to continue upon lifting of the stay, and the confirmation order is still read to have that effect and intent."[5]

**2.** Judge Easterbrook of the Seventh Circuit remarked that "[o]nly a belief that bankruptcy is forever could produce a case such as this." *See Pettibone Corp. v. Easley,* 935 F.2d 120, 121 (7th Cir.1991).

**3.** Plaintiffs also named Gilchrist Machinery Company, Inc. as a defendant. Gilchrist Machinery was the alleged lessor of the equipment.

**4.** *In re Pettibone Corp.,* 110 B.R. 848 (Bkrtcy. N.D.Ill.1990).

**5.** 110 B.R. at 856.

The effect of the bankruptcy court's opinion was to reject Pettibone's defense that the statute of limitations had run on plaintiffs' suit. The district court affirmed the ruling of the bankruptcy court.[6] The Seventh Circuit Court of Appeals held that "[o]nce the judge authorized the prosecution of the personal injury actions (in the confirmation order) . . . all that remained was a debate about the consequences of filing the tort action while the stay was outstanding."[7] The Seventh Circuit further held that the bankruptcy court was without jurisdiction to decide whether the suit filed in violation of the stay order was prescribed under Louisiana's law. In addition, the Seventh Circuit held that the bankruptcy court should not have instructed this Court on the effect of the filing.[8] In so doing, the Seventh Circuit implied that the bankruptcy court could not annul the automatic stay after the plan of reorganization had been confirmed because a court cannot annul something that does not exist.[9]

■ While the bankruptcy court ruled that the suit plaintiffs filed in violation of the automatic stay was void *ab initio*, the law of the Fifth Circuit compels a different conclusion. In *Sikes v. Global Marine, Inc.*[10] The Fifth Circuit held that acts taken in violation of the automatic stay are voidable rather than void.[11] The distinction between the terms "voidable" and "void" arises in the "curability" of the acts.[12] Acts which are merely "voidable" are capable of discretionary cure.[13] Thus, the Fifth Circuit recognizes that a bankruptcy court may "cure" the violation of the automatic stay by lifting, altering or modifying the automatic stay. If the stay is lifted, the original filing is validated since the bank-ruptcy court's intent is to allow the claims to proceed to judgment.[14]

■ The law of the Fifth Circuit as applied to the facts of this case compels one conclusion—by operation of law, the bankruptcy court cured the defect of plaintiffs' initial filing when it approved the plan of reorganization which allowed plaintiffs to proceed with their tort action. While the bankruptcy court's opinion regarding the effect of the violation was rendered without authority, the court did clarify its confirmation order by recognizing that "[a]ll suits previously filed were to continue upon lifting of the stay . . ."[15] As in *Sikes*, the intent of the bankruptcy court here was clear—to allow the claims filed by plaintiffs to proceed to judgment. Since the initial suit filed in the Middle District of Louisiana was valid, there was no need to require plaintiffs to refile another suit within 30 days of the bankruptcy court's order confirming Pettibone's plan of reorganization.

■ Even assuming *arguendo* that the initial suit filed by the plaintiffs was void *ab initio*, Pettibone overlooks Louisiana's alternate means of interrupting prescription. Clearly the applicable prescriptive period for this action is one year.[16] Under Louisiana law, prescription is interrupted by service of process made on a defendant within one year despite the fact that the suit might have been filed in a court without jurisdiction or proper venue.[17] Indeed, the Louisiana Supreme Court has held that service of process is sufficient to interrupt prescription even if the defendant fails to acknowledge service under the technical requirements of the Federal Rules of Civil Procedure.[18]

6. 119 B.R. 603 (N.D.Ill.1990).

7. 935 F.2d at 123.

8. *Id.*

9. In this regard, Judge Easterbrook opined that "[e]ven legal fictions have their limits." *Pettibone,* 935 F.2d at 123.

10. 881 F.2d 176 (5th Cir.1989).

11. 881 F.2d at 178.

12. *Id.*

13. *Id.*

14. 881 F.2d at 179.

15. 110 B.R. at 856.

16. La.Civ.Code art. 3492.

17. La.Civ.Code art. 3462.

18. *Breaux v. Vicknair,* 507 So.2d 1242, 1243 (La. 1987).

On April 14, 1992, this Court ordered plaintiffs to submit evidence to the Court to support their allegation that sufficient service of process was timely made on Pettibone Corporation. In compliance with this order, plaintiffs submitted Pettibone's amended filing in the Bankruptcy Court of the Northern District of Illinois on July 14, 1987, where Pettibone admitted they were served on June 19, 1986. The Court treats this pleading filed in the United States Bankruptcy Court as a judicial admission that service of process was timely made on Pettibone by plaintiffs. At the very least, the pleading supports a finding by this Court that defendants had notice of the suit sufficient to interrupt prescription in accord with *Breaux v. Vicknair.*

The accident here allegedly occurred August 7, 1985. Pettibone acknowledges that service of process was effected on June 19, 1986—within the one year prescriptive period. Therefore, prescription was interrupted by service of process under the facts of this case.

Therefore:

IT IS ORDERED that Pettibone's motion to dismiss pursuant to Rule 12(b)(1), (2), (4), (5), and (6) of the Federal Rules of Civil Procedure be and it is hereby DENIED.