**Nova BENNETT, Personal Representative of the Estate of Elden Bennett, Deceased, Plaintiff–Appellant,**

v.

**UNITED STATES LINES, INC., Defendant–Appellee.**

**No. 1654, Docket 94–9108.**

United States Court of Appeals, Second Circuit.

Argued May 9, 1995.

Decided Aug. 22, 1995.

Walter Z. Steinman, Bala Cynwyd, PA, for plaintiff-appellant.

Jeremy J.O. Harwood, New York City (Philip S. LaPenta, Healy & Baillie, New York City, of counsel), for defendant-appellee.

Before: NEWMAN, Chief Judge, CARDAMONE, and PARKER, Circuit Judges.

CARDAMONE, Circuit Judge:

On July 4, 1987 Elden Bennett was brutally stabbed to death by a fellow crewmember aboard the S.S. AMERICAN ENVOY, a vessel owned and operated by United State Lines, Inc. (U.S. Lines). He was survived by his wife and three children. Following this lamentable event Elden Bennett's estate, represented by his widow, Nova Bennett (Bennett) brought a claim against U.S. Lines

for negligence and unseaworthiness under the Jones Act, 46 U.S.C.App. § 688 (1988). The claim was governed by the three-year statute of limitations provided for in the Jones Act and the Uniform Statute of Limitations for Maritime Torts, 46 U.S.C.App. § 763a (1988). When the cause of action arose in 1987, U.S. Lines was operating in bankruptcy. Unfortunately, the attorney retained by Bennett mistakenly assumed that the statute of limitations was tolled by the automatic stay provision of the bankruptcy code, 11 U.S.C. § 362(a) (1988). As a result, plaintiff's complaint was not filed until January 3, 1992, four and one-half years after decedent's death. On U.S. Lines' motion the district court was forced to grant summary judgment to the defendant and to dismiss plaintiff's complaint as time-barred.

This litigation is an attempt by Bennett's attorney to shift the blame for the untimely filing onto the shoulders of the shipowner's representatives. The argument presented is that those corporate officials either are estopped from raising the statute of limitations as a defense on account of their statements to plaintiff concerning the status of her suit; or that in making such representations, they breached a fiduciary duty owed to creditors of the bankrupt estate. Neither of these arguments carries the day. For the reasons given below, we affirm the district court's grant of summary judgment to U.S. Lines.

## BACKGROUND

U.S. Lines and its co-debtor, United States Lines (S.A.), Inc., (debtors) filed for Chapter 11 relief, see 11 U.S.C. §§ 101 et seq. (1988), in bankruptcy court on November 24, 1986, but continued to operate vessels thereafter as "debtors-in-possession." Debtors were granted an automatic stay enjoining the commencement or continuance of all pre-petition claims pursuant to 11 U.S.C. § 362(a). On May 16, 1989 the bankruptcy court approved a First Amended and Restated Joint Plan of Reorganization (the Plan) transferring all assets of debtors to their successor-in-interest, the United States Lines, Inc. and United States Lines (S.A.), Inc. Reorganization Trust (the Trust). The Plan provides that

the Trust shall act as assignee and disbursing agent of debtors.

On November 9, 1987 plaintiff's attorney, Walter Z. Steinman, Esq., filed a proof of claim for Elden Bennett's wrongful death in bankruptcy court. The proof of claim form clearly states the date of injury as July 4, 1987, but it also mistakenly alleges that the claim existed before U.S. Lines filed for bankruptcy. The form asserts that "at the time of filing ... [U.S. Lines was] indebted (or liable) to this claimant" and also that the claimant's is a "general unsecured claim." Indeed, the proof of claim form by definition only applies to "pre-petition" claims, and by submitting it, plaintiff's attorney essentially asserted his belief that the bankruptcy stay applied to Elden Bennett's claim.

This same attorney was also representing Elden Bennett's estate in an action for personal injuries decedent received before his death, as well as another personal injury claimant, one Victor Tedesco (Tedesco). Both of these causes of action arose before U.S. Lines went into bankruptcy, and so were appropriately treated as "pre-petition" claims subject to the bankruptcy stay. U.S. Lines mailed to the attorney copies of the bankruptcy court's restraining order in connection with his representation of both personal injury cases. Regarding the Tedesco case, for which a complaint had actually been filed in district court, U.S. Lines erroneously informed him that "*all* cases against U.S. Lines are 'stayed.'" (emphasis added).

Plaintiff's counsel continued to press settlement negotiations in all three matters. Both personal injury actions eventually were settled, but the parties failed to resolve the wrongful death cause of action. In the course of their communications, Bennett alleges that various U.S. Lines representatives made statements which gave her counsel the misleading impression that her husband's wrongful death action was also subject to the bankruptcy stay. These statements, which form the basis of Bennett's claim on appeal, plaintiff believes estop U.S. Lines from raising the statute of limitations as a defense.

*Hugh Carr:* Plaintiff's counsel initially communicated about the three cases with Hugh Carr, the in-house counsel and corporate secretary of U.S. Lines. Counsel's affidavit declares that Carr was handling all claims on behalf of U.S. Lines and was also empowered to negotiate on behalf of the U.K. Club, the protection and indemnity insurer for U.S. Lines. (Steinman Aff. ¶¶ 6–8). Plaintiff's lawyer also alleges—without documentary support—that during a telephone conversation on April 8, 1988 Carr specifically "advised [counsel] that the Bankruptcy Stay applied to all of the [Bennett and Tedesco] cases." (*Id.* ¶ 8). Carr died in October 1989, temporarily interrupting the parties' negotiations.

*Thomas Beckett, Esq.:* Leslie Beth Baskin, Esq. acted as specialist bankruptcy co-counsel for plaintiff's attorney in the Bennett matters. (Baskin Aff. ¶ 1). In early 1989, Baskin repeatedly communicated by telephone with Thomas Beckett of Milbank, Tweed, Hadley & McCloy, former bankruptcy counsel of U.S. Lines. (*Id.* ¶¶ 4–8). According to Baskin's affidavit, in these conversations Beckett "made it clear to [her] that he agreed that both the pre-petition and post-petition claims required relief from the automatic stay ... and recognized that one claim arose on a post-petition basis." (*Id.* ¶¶ 6, 8). But Beckett's confirmatory letter does not fully support Baskin's allegations. In it, Beckett merely "regret[s] the delay in obtaining a lift of stay *or other relief* for your clients" and states that the matter is being referred to the U.K. Club for further investigation. (emphasis added).

*Bart Smythe:* After Carr's death, U.S. Lines appointed Bart Smythe as claims manager. In April 1990 Smythe wrote to plaintiff's counsel advising that there appeared to be duplicate proofs of claim for Elden Bennett on file in the bankruptcy court. Attorney Baskin wrote in response that one proof of claim—the pre-petition one—could be withdrawn, but that the other should be maintained "as an administrative claim." This exchange of letters occurred several months before the three-year statute of limitations on the wrongful death claim expired on July 3, 1990.

In August 1990, after the statute of limitations had expired—but while the bankruptcy

stay was still in place—Smythe told plaintiff's counsel that negotiations could go forward on Elden Bennett's claim. Smythe requested detailed factual and documentary information in support of the claim, and referred counsel to Agnes Martin of Transport Mutual Services, a U.K. Club representative, as the person responsible for handling the settlement of the claim.

*Agnes Martin:* Counsel first contacted Martin by letter in October 1990. In January 1991 Martin wrote in response that the Elden Bennett claim was under review. She added, "We expect to be in a position to discuss settlement within the next 30/45 days." Counsel and Martin had no further contact for over a year and did not actually meet until March 1992, at which time Martin advised plaintiff's counsel that the estate's wrongful death action was time-barred.

On May 30, 1991—nearly 11 months after the statute of limitations had expired—Bennett moved the bankruptcy court for relief from the automatic stay. A Lift Stay Order was signed on October 22, 1991, without objection from the trustees, and on November 6, 1991 Bennett provided U.S. Lines with a copy of the order. Bennett filed her complaint in the United States District Court for the Southern District of New York (Leisure, J.) on January 3, 1992, that is, 58 days after the last possible date when she may be deemed to have had actual notice that the bankruptcy stay had been lifted.

U.S. Lines moved for summary judgment on April 28, 1992, and the district court granted the motion, dismissing the claim as time-barred. The district court held that even if the automatic stay applied to Elden Bennett's claim, the 30–day extension period provided by 11 U.S.C. § 108(c) had elapsed before the complaint was filed, compelling dismissal in accordance with *Aslanidis v. U.S. Lines, Inc.,* 7 F.3d 1067, 1073 (2d Cir. 1993).

The district court subsequently denied Bennett's motion for reconsideration, and this appeal followed.

## DISCUSSION

### I  Equitable Estoppel

■ Taking all of Bennett's allegations as true, we must assume that before the statute of limitations expired U.S. Lines' agents specifically informed Bennett that the post-petition wrongful death claim was governed by the automatic stay, and that Bennett relied on this misinformation in failing to file a timely complaint. Bennett urges that, as a consequence of their false representations, defendants are estopped from asserting the statute of limitations as a defense. *Cf. Glus v. Brooklyn Eastern District Terminal,* 359 U.S. 231, 235, 79 S.Ct. 760, 763, 3 L.Ed.2d 770 (1959) (estoppel warranted if "respondent's responsible agents ... conducted themselves in such a way that petitioner was justifiably misled into a good-faith belief" that limitations defense would not be raised).

■ The elements of estoppel are a material misrepresentation, reasonable reliance, and provable damages. *See Lee v. Burkhart,* 991 F.2d 1004, 1009 (2d Cir.1993). Whether equitable estoppel applies presents an issue of fact. *See Petrelli v. City of Mount Vernon,* 9 F.3d 250, 256 (2d Cir.1993). The justification for estoppel need not be proven by documentation, *see Mikinberg v. Baltic S.S. Co.,* 988 F.2d 327, 331 (2d Cir.1993), but the party asserting applicability of the doctrine "must do more than show that some metaphysical doubt exists regarding the material facts," *Aslanidis,* 7 F.3d at 1075.

We think Bennett has met this standard. In particular, affidavits submitted by Bennett's counsel maintain that two of U.S. Lines' attorneys, Carr and Beckett, each repeatedly insisted that the wrongful death cause of action was subject to the bankruptcy stay and could not be prosecuted. For purposes of summary judgment review, we need not resolve whether Bennett's reliance on these assertions was justified in light of the text of § 108(c), which by its language clearly applies only to pre-petition claims. *Cf. Glus,* 359 U.S. at 235, 79 S.Ct. at 763 (whether reliance on representations of law is justified presents a circumstantial question not resolvable on appeal). Accordingly, plaintiff's allegations suffice to establish that defendants should be equitably estopped from asserting that the bankruptcy stay did not apply to the wrongful death claim.

■ Having determined that U.S. Lines is equitably estopped does not end our analysis. The reason is because equitable estoppel does not operate to toll the statute of limitations. Equitable tolling is distinct from the doctrine of equitable estoppel; equitable tolling prevents the running of a statute of limitations against a plaintiff who is unaware that he has a cause of action because of defendant's fraudulent acts or concealment. *See Dillman v. Combustion Engineering, Inc.,* 784 F.2d 57, 60 (2d Cir.1986); *Cerbone v. International Ladies' Garment Workers' Union,* 768 F.2d 45, 48–49 (2d Cir.1985). The doctrine may be applied in cases where the defendant is shown to have "engaged in conduct, often itself fraudulent, that concealed from the plaintiff the existence of the cause of action." *Cerbone,* 768 F.2d at 48.

The doctrine of equitable tolling does not apply in the instant case. Nothing in the record before us suggests that Bennett was actually prevented from exercising her rights, nor can it be denied that she was aware that she had a cause of action for wrongful death on the high seas. Moreover, it does not appear that U.S. Lines was engaged in a routine practice of deliberately misleading post-petition personal injury claimants into a belief that because of the automatic stay their suits could not be filed: at least four such complaints were filed without U.S. Lines making any reference to the bankruptcy stay. Thus Bennett cannot claim the statute of limitations was tolled by U.S. Lines' conduct, but only that U.S. Lines—having caused Bennett's delay by explicitly asserting the contrary—now may not argue that the wrongful death claim was exempt from the bankruptcy court's order. *Cf. Cerbone,* 768 F.2d at 50 (equitable estoppel appropriate where defendant "in some way lulled the plaintiff into believing that it was not necessary for him to commence litigation"). And estoppel alone, as our discussion below demonstrates, will not suffice to prevent dismissal of Bennett's complaint.

## II Effect of the Bankruptcy Stay

■ The district court correctly noted that, even if Bennett's complaint were considered to be subject to the automatic stay, the case would still have to be dismissed as untimely. Under 11 U.S.C. § 108(c), as construed by *Aslanidis,* 7 F.3d at 1073, Bennett had only 30 days to file from the time she had notice that the bankruptcy court had ordered the stay lifted. In *Aslanidis,* we held that "by its terms § 108(c) does not provide for tolling of any externally imposed time bars, such as those found in the two maritime statutes of limitations. The bankruptcy section only calls for applicable time deadlines to be extended for 30 days after notice of the termination of a bankruptcy stay." *Id.; accord, e.g., Rogers v. Corrosion Prods., Inc.,* 42 F.3d 292, 297, 297 & n. 6 (5th Cir.) (holding "that § 108(c) does not create a separate tolling provision" and collecting cases), *cert. denied,* —— U.S. ——, 115 S.Ct. 2614, 132 L.Ed.2d 857 (1995); *Moser v. Universal Engineering Corp.,* 11 F.3d 720, 722 (7th Cir.1993) (products liability suit dismissed during pendency of bankruptcy stay was untimely if not refiled within 30 days of stay being lifted); *Easley v. Pettibone Michigan Corp.,* 990 F.2d 905, 912 (6th Cir.1993) (same); *but see, e.g., In re West,* 5 F.3d 423, 425–27 (9th Cir.1993) (suspension of limitations period was required by Internal Revenue Code section incorporated by § 108(c)), *cert. denied,* —— U.S. ——, 114 S.Ct. 1830, 128 L.Ed.2d 459 (1994); *In re Richards,* 994 F.2d 763, 766 (10th Cir.1993) (government's 240–day income tax assessment period "tolled" by § 108(c)).

The application of equitable estoppel principles, as noted above, operates only to prevent defendants from asserting that Elden Bennett's claim was not affected by the stay. Estoppel, as already noted, did not toll the statute of limitations; it merely gave Bennett the benefit of the 30–day filing extension provided by § 108(c), a benefit of which she failed to take timely advantage. Bennett accordingly finds herself in the identical position of the plaintiff in *Aslanidis.* There is no reason to reach a different result in this case simply because Bennett arrives in that position by the operation of equity. We decline to consider those arguments raised by plaintiff that we squarely rejected in *Aslanidis,* including her attempted reliance on the reasoning of *McKinney v. Waterman S.S. Corp.,*

739 F.Supp. 678 (D.Mass.1990), *aff'd*, 925 F.2d 1 (1st Cir.1991).

Admittedly the result we reach works a harsh result: had Bennett's lawyer filed only a month earlier, she might have recovered a substantial amount from defendant as compensation for her husband's death. Nonetheless, we may not refuse to apply the rule of *Aslanidis* to Bennett on the basis that that rule was announced while resolution of her case was still pending. *See James B. Beam Distilling Co. v. Georgia,* 501 U.S. 529, 540, 111 S.Ct. 2439, 2445–46, 115 L.Ed.2d 481 (1991) (refusal to apply retroactively a rule of federal law prohibited once that rule has been applied to litigants in case which announced the rule); *see also Harper v. Virginia Dep't. of Taxation,* —— U.S. ——, ——, 113 S.Ct. 2510, 2517, 125 L.Ed.2d 74 (1993) (prohibiting "the erection of selective temporal barriers to the application of federal law in noncriminal cases"); *Welch v. Cadre Capital,* 946 F.2d 185, 186 (2d Cir.1991) (following *Jim Beam* ). We must observe again that Bennett's counsel was the one who moved for relief from the automatic stay and obtained a lifting of that stay. The result of counsel's action gave Bennett 30 days to file her complaint, even though the statute of limitations had expired nearly a year earlier. Regrettably, advantage was not taken of this 30–day window of opportunity, the complaint being filed 58 days after plaintiff had notice of the lifting of the stay.

### III Fiduciary Duties of Bankruptcy Trustees

■ Finally, we briefly address Bennett's argument that the Trust had a fiduciary duty which it owed her as a claimant against the bankruptcy estate. Bennett asserts that such duty arises from the language of the Plan, which makes the Trust responsible for managing and distributing funds on behalf of all the estate's personal injury claimants. Under the terms of the Plan, the Trust inherits all insurance rights of the debtors, and "[the U.S. Lines] Reorganization Trustee shall attempt to secure *for the benefit of the holders of the Personal Injury Claims* all such insurance rights." (Plan, Article VII(A)(1)(i)) (emphasis added). Bennett in-

terprets this language to mean that the Trust had a responsibility to protect personal injury claimants, to the extent of being required to alert them in advance of all filing deadlines, including the 30–day "window" of § 108(c).

This aspect of Bennett's appeal is meritless. The Bankruptcy Code does not "require debtor to be responsible for tutoring counsel for claimants as to how their rights are to be protected or to give counsel step-by-step instructions on how such claims or suits are to be maintained." *In re Pettibone Corp.,* 110 B.R. 848, 855 (Bankr.N.D.Ill.1990) (cited with approval in *Aslanidis,* 7 F.3d at 1074), *aff'd sub nom. Pettibone Corp. v. Baker,* 119 B.R. 603 (N.D.Ill.1990), *rev'd and remanded on other grounds sub nom. Pettibone Corp. v. Easley,* 935 F.2d 120 (7th Cir. 1991). The Trust's fiduciary duty to manage estate assets, including insurance proceeds, cannot be recast into a duty to shepherd personal injury plaintiffs through litigation.

### CONCLUSION

The district court's order dismissing Bennett's complaint as untimely is affirmed.