**In re Leon DEICAS and Susana B. Deicas, a/k/a S.B. de Deicas, Debtors.**

**Albert KLEIN, David Bramzon, and Bernardo Bramzon, Plaintiffs,**

v.

**Leon DEICAS and Susana B. Deicas, a/k/a S.B. de Deicas, Defendants.**

**Related Bankruptcy No. 91–00581–H7. Adv. No. 91–90246–H7.**

United States Bankruptcy Court, S.D. California.

Feb. 11, 1992.

Stephen K. Haynes, David L. Buchbinder & Associates, San Diego, Cal., for defendants.

Karl H. Griesbaum, La Jolla, Cal., Richard F. Volker, Sobel & Volker, San Diego, Cal., for plaintiffs.

## MEMORANDUM DECISION

JOHN J. HARGROVE, Bankruptcy Judge.

### INTRODUCTION

On April 22, 1991, plaintiffs Albert Klein, David Bramzon and Bernardo Bramzon ("plaintiffs") filed a complaint against Leon and Susana Deicas ("defendants") to determine certain debts as nondischargeable under § 523(a)(2) and objecting to discharge under § 727(a)(3). The debtors brought a motion to dismiss for plaintiff's failure to state a cause of action under Fed.R.Civ.P. 12(b)(6) (Bankr.R. 7012(b)). At issue is whether the statute of limitations bars the plaintiffs' fraud claims under § 523(a)(2) because the plaintiffs discovered the alleged fraud more than three years prior to the filing of debtor's Chapter 7 filing.

This court has jurisdiction to hear this matter pursuant to 28 U.S.C. § 1334 and § 157(b)(1) and General Order No. 312–D of the United States District Court, Southern District of California. This is a core proceeding pursuant to § 157(b)(2)(I).

### FACTS

Between the years of 1979 and 1983 plaintiffs invested funds in exchange for stock ownership in various domestic and foreign corporations formed by Leon Deicas and his brother Mauricio Deicas ("Deicas'"). The Deicas' represented to the plaintiffs that the corporations were formed for the purpose of purchasing and improving real property in several states. In all stock transactions, plaintiffs received typed receipts as proof of ownership with the Deicas' oral promise that share certificates would soon follow. Plaintiffs never received the certificates.

In separate transactions, the plaintiffs became owners of three condominium units at one of the real estate developments owned by the Deicas'. However, no deeds were ever issued to vest title ownership in the plaintiffs.

In September 1983, the Deicas' offered to repurchase certain stock from the plaintiffs for a profit. The Deicas' first tendered a check and subsequently by mutual agreement the plaintiffs exchanged the check for four promissory notes secured by real property totalling $960,000.

In January of 1984, the Deicas' offered to repurchase certain other stock and the three condominium units from the plaintiffs for a profit. To complete the repurchase, the Deicas' assigned to plaintiffs two promissory notes owned by Breft, Inc.,

another corporation formed by the Deicas'. One of the notes was secured by a deed of trust. The Deicas' also delivered three promissory notes with two of them secured by a deed of trust. The five notes totalled $1,684,710.

In early 1986, the Deicas' were unable to make payments on the nine notes that totalled $2,644,710. In the summer of 1986, the parties restructured the debt. With both parties represented by competent counsel, they entered into a settlement agreement and general mutual release ("the agreement"). The agreement addressed each transaction and the nine promissory notes.

The agreement recited that the parties released and discharged the other from all claims which either of the parties have asserted or could assert in the future based on any of the past transactions. The agreement also recited that all past obligations and liabilities were canceled except for obligations under two of the notes. Further, both parties waived any rights they may have had under California Civil Code § 1542 which provides that a general release does not extend to claims that the creditor is unaware of at the time of entering into the release.

According to the agreement, Mauricio Deicas was to pay a liquidated amount in various payment schedules with the final payment occurring by December 1, 1987, and Leon Deicas was to serve as guarantor. A default clause provided that the plaintiffs had the option, but not the duty, to terminate the agreement. If plaintiffs elected to terminate the agreement, it would become null and void. Another clause allowed for reasonable attorneys' fees in event of a dispute. The final clause stated that neither party had relied upon any statement or representation when entering into the agreement.

Under the agreement, Mauricio Deicas tendered only an initial interest payment of $24,800, but the check was returned for insufficient funds. On August 19, 1986, the plaintiffs terminated the agreement by written notice pursuant to the termination clause.

In March 1988, Mauricio Deicas filed a petition for relief under Chapter 7. In June 1988, plaintiffs conducted a 2004 examination of Mauricio and contend that they first discovered the alleged fraud during the examination. Plaintiffs assert that during this examination they learned that all of the common stock they were dealing with was unregistered and that the Deicas' had made numerous misrepresentations in regards to the stock exchange transactions, repurchase transactions, and the settlement agreement and mutual release.

In June 1988, Leon and Susana Deicas filed their petition for relief under Chapter 11. The case was converted to a Chapter 7 in March 1989. In June 1989 the plaintiffs filed an adversary proceeding against the debtors objecting to their discharge and to determine certain debts as nondischargeable. However, the suit was not litigated to judgment due to the debtor's subsequent dismissal which was entered on October 25, 1989. The claims alleged in the 1988 adversary are identical to the claims asserted in this proceeding. The plaintiffs conducted 2004 examinations of the debtors during this time.

On January 18, 1991, the defendants filed this Chapter 7 proceeding. Plaintiffs filed a complaint claiming that the debt owed to them is nondischargeable because the defendants had defrauded them. Plaintiffs also object to the debtor's discharge under § 727(a)(3) for failure to preserve records of business transactions.

## DISCUSSION

The defendants contend that the action brought against them is barred by the statute of limitations because the plaintiffs discovery of the alleged fraud occurred no later than the agreement which was signed by the plaintiffs on August 8, 1986. Plaintiffs' attempt to avoid the bar of the statute of limitations by pleading that they first discovered the fraud in June of 1988 when taking the 2004 examination of Mauricio Deicas and that the statute of limitations was tolled during the defendant's previous bankruptcy thereby extending the

statute of limitations by one year, four months, and three days.

## A. THE APPLICABLE STATUTE OF LIMITATIONS.

■ Section 523(a)(2) contains no statute of limitations. Where the Bankruptcy Code is silent, and no uniform bankruptcy rule is required, the rights of the parties are governed by the underlying nonbankruptcy law. *Butner v. U.S.*, 440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). The applicable statute of limitations for fraud under California law is three years, but is tolled until the "discovery, by the aggrieved party, of the facts constituting the fraud or mistake." Cal.Civ.Pro.Code § 338(d) (West 1982). Thus, the statute of limitations has not run unless it began to run on or before January 18, 1988, three years before the filing of this bankruptcy.

## B. DISCOVERY OF THE FRAUD.

The court concludes that the plaintiffs' claim is barred by the statute of limitations because there is evidence that plaintiffs discovered or should have discovered the fraud before January 18, 1988.

■ Fed.R.Civ.P. 9(b) provides that "i[n] all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." Under Rule 9(b), the complaint must allege time, place, speaker, and sometimes the content of any alleged misrepresentations. *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir.1985); *Miscellaneous Service Workers, Drivers & Helpers v. Philco–Ford Corp.*, 661 F.2d 776, 782 (9th Cir. 1981). Plaintiff's complaint falls short of this standard. Plaintiffs assert that they discovered the alleged fraud during the 2004 examination of Mauricio Deicas in June 1988, but nowhere do they allege specific facts that caused them to take the examination or specific facts that led to the discovery of fraud at that time. Thus, plaintiffs fail to allege any details that would justify discovery in June 1988.

■ To determine whether the statute of limitations bars the plaintiffs' fraud claim, the sole issue is whether the plaintiffs could have discovered the fraud through the exercise of reasonable diligence. *Sun 'n Sand, Inc. v. United California Bank*, 21 Cal.3d 671, 148 Cal.Rptr. 329, 582 P.2d 920 (1978). Plaintiffs allege that the fraud began as early as 1979 and continued through at least 1986 when the plaintiffs entered into the agreement. Assuming that the debtors did commit the fraudulent acts alleged, all transactions prior to 1986 merged into the agreement and mutual release that was signed by the plaintiffs on August 8, 1986.

Reading the settlement agreement, it is apparent that the plaintiffs were either aware of the misrepresentations made by the defendants or at least could have discovered the alleged fraud through reasonable diligence. The agreement was reviewed by plaintiffs' counsel prior to its execution which indicates that plaintiffs must have been made aware of the implications of settling all claims from prior transactions; the implications of waiving all rights under California Civil Code § 1524; and the implications of the final clause which stated that the parties had not relied upon any statements made by the other.

In addition, the plaintiffs were able to insert the option to terminate the agreement. This unusual clause would not have been included unless both the plaintiffs and their competent counsel anticipated the possibility of the filing of a subsequent bankruptcy which would have discharged all sums owed under the settlement agreement. Indeed, the plaintiffs did exercise their option to terminate, which in turn resurrected plaintiff's fraud claims.

■ Moreover, despite plaintiffs' admission that they discovered the fraud in June of 1988, they still fail to set forth specific facts as to what happened during the eighteen month period between the termination of the agreement and the 2004 examination of Mauricio Deicas. "The plaintiffs confuse discovery of a cause of action with the discovery of evidence to prove it." *Monterey Club Management Assn. v. Morgan,*

230 Cal.App.3d 1465, 1480, 281 Cal.Rptr. 880 (1991). Where the circumstances compel the conclusion that a prudent person would have suspected the fraud, the court may determine as a matter of law, that there has been discovery. *National Automobile & Cas. Ins. Co. v. Payne*, 261 Cal. App.2d 403, 409, 67 Cal.Rptr. 784 (1968). Because plaintiffs must have discovered or had the means to discover the fraud by August 8, 1986, the three year statute of limitations expired before the filing of this bankruptcy.

## C. TOLLING OF THE STATUTE OF LIMITATIONS.

■ Plaintiffs contend that section 108(c) operates to toll the statute of limitations as of the filing date and until the automatic stay is lifted. Plaintiffs would have this court extend the statute of limitations to include any suspension of time that has occurred on or after the filing. However, section 108(c) does not operate to stay or extend the running of a statutory period. Section 108(c) provides:

> Except as provided in section 524 of this title, if applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor or against an individual with respect to which such individual is protected under section 1301 of this title, and before the date of the filing of the petition, then such period does not expire until the later of—
>
> 1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
>
> 2) 30 days after notice of the termination or expiration of the stay under section 362, 722, or 1301 of this title, as the case may be, with respect to such claim.

Section 108(c) was intended to remedy the situation where a debtor filed bankruptcy to allow the statute of limitations to run, and then used the statute of limitations as a complete defense. *In re Morton*, 866 F.2d 561, 566 (2d Cir.1989). There is no language in section 108(c) that suspends a statute of limitations from running. *Grotting v. Hudson Shipbuilders, Inc.*, 85 B.R. 568, 569 (W.D.Wash.1988). Rather, in partial exchange for the stay, section 108(c)(2) grants a claimant an exclusive 30 day period in which to file its claim when the claims' limitation period expired before the automatic stay was lifted. "The language in section 108(c)(1) referring to 'any suspension of such period' means those nonbankruptcy law tolling periods such as minority or incompetency of a plaintiff." *Id.* at 569.

In this case, assuming the statute of limitations still had time to run, plaintiffs fail to set forth specific facts as to what happened in the approximately two and one half months after the dismissal of the 1988 bankruptcy and before the filing of this case on January 18, 1991. Further, assuming the statute of limitations had expired during the 1988 bankruptcy, plaintiffs still failed to commence a state court lawsuit during the 30 day period following the dismissal that is permitted by section 108(c)(2).

Finally, it is clear that § 108(c) does not apply to proceedings in the bankruptcy court. Nondischargeability proceedings accelerate the discovery process because the dischargeability of a debt can significantly affect a debtor's ability to obtain a fresh start.[1] In addition, fraud dischargeability issues under § 523(a)(2) are vested exclusively in the bankruptcy court. Obviously aware of this requirement, the plaintiffs timely filed an almost identical nondischargeability action against the defendants in 1988. Further, the plaintiffs actually conducted 2004 examinations of both Leon and Susana Deicas before the case was dismissed. Plaintiff's contention that the statute of limitations on an action for fraud should be tolled during the defendant's

---

1. Under Bankruptcy Rule 4007(c) a plaintiff who is alleging fraud must file a complaint to determine the nondischarageability of a debt within 60 days following the first date set for the meeting of creditors held pursuant to § 341(a), or apply for an extension.

1988 bankruptcy is contrary to the exclusive statute of limitations prescribed by Fed.R.Bankr.Proc. 4007(c).

### D. CAUSE OF ACTION UNDER SECTION 727(a)(3).

 Under § 727 only creditors may object to a debtor's discharge. Thus, the plaintiffs lack standing to object under this section because their claims against the defendants are barred by the statute of limitations expiring prior to the filing of the bankruptcy petition.

### CONCLUSION

This Memorandum Decision constitutes findings of fact and conclusions of law pursuant to Federal Rules of Bankruptcy Procedure 7052. Counsel for defendants is directed to file with this court an order in conformance with this Memorandum Decision within ten (10) days from the date of entry hereof.