In re CONFIDENTIAL INVESTIGATIVE CONSULTANTS, INC., Debtor.

Bankruptcy No. 91 B 08172.

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Feb. 10, 1995.

740

8008

4000 ___

7000 800089000 90000 1000 Timothy Huizenga, Jennifer J. Payne, David S. Yen, Legal Assistance Foundation, and Joseph E. Cohen, Cohen & Krol, Chicago, IL, for debtor.

Mitchell H. Frazen, Burditt & Radzius, Chicago, IL, for CIC.

### MEMORANDUM OPINION ON JONES' MOTION TO ANNUL STAY

JACK B. SCHMETTERER, Bankruptcy Judge.

Confidential Investigative Consultants, Inc. ("CIC" or "Debtor") filed this bankruptcy case on April 16, 1991, under Chapter 11 of the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* CIC's Reorganization Plan was confirmed on March 19, 1992, but the Plan has not yet been consummated and a final decree has not been entered. This Court reserved jurisdiction to enforce the Plan.

Following Plan confirmation, Kenneth Jones ("Jones"), an unsecured creditor and former employee of Debtor, moved to annul the automatic stay. He thereby seeks to modify the stay with retroactive effect to validate a suit he filed and prosecuted for some time without notice of the bankruptcy.

On March 4, 1992, Jones filed suit in United States District Court for the Northern District of Illinois, alleging that CIC fired him in September, 1990, in violation of the Employee Polygraph Protection Act, 29 U.S.C. § 2001, *et seq.*, ("EPPA"). Although that suit was filed while the bankruptcy automatic stay was still in effect, Jones and his counsel were not informed of CIC's bankruptcy filing until after the confirmation order (but prior to trial), and CIC never asserted the automatic stay under 11 U.S.C. § 362(a)(1) against the lawsuit prior to trial. The parties consented to be tried by jury before a Magistrate Judge without either side informing that judge about CIC's bank-

ruptcy filing prior to suit. On October 6, 1993, the jury returned a verdict in favor of Jones in the amount of $90,000.00. Judgment was thereupon entered on the jury verdict and CIC immediately appealed the judgment.

CIC then filed a motion before the Magistrate Judge to vacate the judgment, for the first time informing her of its bankruptcy filing prior to the filing of suit. That motion was based on an asserted violation of the automatic stay by Jones in filing of his suit while the stay was in effect. The Magistrate Judge ruled that the suit filing was nullified by the stay and stated that she was prepared to vacate the judgment upon remand of the appeal. The substantive appeal has been stayed pending action here, as Jones moved that this Court annul CIC's now-expired automatic stay retroactively, so as to validate the original filing of suit and judgment therein. He also refiled his suit in an effort to save the cause of action from limitations if his first lawsuit is found to be a nullity.

For reasons stated herein, an evidentiary hearing will be set on that motion along with a hearing on other issues defined below.

### RELEVANT FACTS [1]

Kenneth Jones was fired from his position as security guard with Confidential Investigative Consultants, Inc. on September 21, 1990, after submitting to a lie detector test at CIC's request. Seven months later, on April 16, 1991, CIC filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. At the time, CIC did not schedule Jones as a creditor in its bankruptcy schedules. Jones maintains that prior to October

of 1992, he received no notice—formal or otherwise—of CIC's bankruptcy filing.

On April 23, 1991, seven days after CIC filed in bankruptcy, Jones's attorney sent a letter to Mr. Jim Bienge of CIC, declaring his intention to file suit on Jones's behalf for alleged violations of the Employee Polygraph Protection Act of 1988 ("EPPA"), and asking CIC to consider settlement options. CIC failed to respond to that letter. Nine months later, on December 9, 1991, Jones's attorney sent a second, nearly identical letter to Bienge, again encouraging CIC to enter into settlement negotiations. Ms. Marian Collum, Personnel Director, finally responded on behalf of CIC by letter dated December 18, 1991. Collum asserted that CIC had not violated the EPPA and that Jones had been "laid-off due to lack of work, not terminated due to failure of test." CIC did not, however, inform Jones about the pending bankruptcy filing and did not then amend its bankruptcy schedules to list Jones as a creditor as required under the Bankruptcy Code. 11 U.S.C. § 521(1); Fed.R.Bankr.P. 1007. Why it did not do so is not yet known to the Court.[2]

On March 3, 1992, Jones filed suit against CIC in the Northern District of Illinois. *Jones v. Confidential Investigative Consultants, Inc.* (92 C 1566) (*"Jones v. CIC"*). Sixteen days later, on March 19, 1992, this Court confirmed CIC's Third Amended Plan of Reorganization. The Plan provides that unsecured creditors are to receive 20% of their allowed claims in installment payments over a four-year period following confirmation.[3] Upon confirmation, the automatic stay terminated as a matter of law under 11 U.S.C. § 362(c).

---

1. The pleadings and briefs did not clearly define factual disputes. The parties mainly briefed legal issues. The following facts emerge from the filings thus far (although no evidentiary hearing has yet been held and these facts are in no sense found by the Court).

2. The parties have indicated that a malpractice lawsuit is pending against CIC's counsel (Smith, Rubin & Associates, Ltd.) in *Jones v. CIC,* accusing that firm of failing to advise CIC of the applicability of the automatic stay to Jones's lawsuit. Smith, Rubin responded by claiming that CIC was told about the effect of the stay and advised to contact its bankruptcy counsel. As an

affirmative defense, Smith, Rubin has claimed that "CIC did not advise its bankruptcy counsel of the Jones Action because CIC perceived that it would have to tender monies toward resolution of the Jones Action if the bankruptcy court was made aware of the litigation." Answer 12 at p. 12. Reply Memorandum. The forthcoming hearing here will afford the parties an opportunity to produce proof on these matters.

3. As of December 22, 1994, CIC reported that it was current on its payment obligations under the Plan.

Jones was never served with notice of the proposed Plan, disclosure statement, confirmation procedures, ballot to permit voting, or the deadline for unsecured creditors to file claims, as required under the Bankruptcy Code. 11 U.S.C. §§ 342, 1125(b), 1128(a); Fed.R.Bankr.P. 2002, 2015(a), 3004, 3013, 3017. Once again, the Court does not know why Jones was treated thusly, given the written demands by his lawyer made many months prior to confirmation. While suit was filed before confirmation, it is not known when summons was served.

The District Court suit in *Jones v. CIC* proceeded through pretrial preparations for seven months after plan confirmation herein, without any notice to Jones during that period about CIC's bankruptcy proceeding. Finally, on October 13, 1992, Mr. Zane Smith, of Smith, Rubin & Assoc., Ltd., as counsel for CIC, sent a letter to counsel for Jones (at the Legal Assistance Foundation of Chicago), complying in part with a discovery request and indicating, almost as an aside: "In addition, the bankruptcy petition is file # 91 BD 8172 and the defendants, [CIC], were discharged on March 17, 1992. Inasmuch as these petitions are now public record you may seek whatever copies you wish from the bankruptcy court." The record here does not permit a finding as to whether Jones's attorney had any notice of CIC's bankruptcy filing prior to that letter. However, it presently appears that Jones first received notice of CIC's bankruptcy through that letter dated October 13, 1992, seven months after the confirmation order.

At that point, although the automatic stay had ended as a matter of law, the confirmation order had the effect of a statutory injunction, barring efforts to collect any debt not provided in the Plan. 11 U.S.C. § 524. Since Jones never filed a claim, he is not presently entitled to plan benefits but is presently barred by § 524 from seeking any recovery on his pre-bankruptcy claim. However, counsel for CIC failed to assert before the Magistrate Judge prior to trial either that Jones had violated the automatic stay by his suit filing or that the confirmation injunction barred continuation of the suit. We do not know whether counsel for Jones checked

the bankruptcy court file after receiving the October 13 letter to ascertain the period in which the automatic stay pended, but they could have done so before trial after they received that letter. Jones's counsel took no action with respect to the stay either before the Magistrate Judge or this Court when the letter was received.

The District Court suit went to trial a year later. During the months before the trial was held, the non-bankruptcy limitations period for any refiling of Jones's suit may have expired on September 21, 1993, as more fully discussed below. On October 6, 1993, after several days of testimony and argument, the jury in *Jones v. CIC* returned a $90,000.00 verdict in Jones's favor. Presiding Magistrate Judge Bucklo entered judgment on the verdict that same day.

Only after they lost the jury verdict did CIC counsel act on the fact that a bankruptcy filing had been pending when suit was filed. They waited until the judgment was entered against CIC to bring this bankruptcy into the lawsuit picture.

On December 10, 1993, attorney Joseph Cohen, of Cohen & Krol, wrote to Jones's attorneys, informing them that he had served as counsel in CIC's bankruptcy proceeding. In this letter, Cohen stated he had been informed that Jones's attorney was aware of the bankruptcy, and that *Jones v. CIC* never should have gone to trial because of the automatic stay. Cohen further informed Jones's counsel that an amendment to CIC's Schedule F had been filed, listing Jones and his attorneys as creditors of the estate. (Such amendment was in fact filed in this bankruptcy proceeding on November 16, 1993, but at this point it is not known whether leave of the bankruptcy court was obtained or prior notice was served on Jones and his counsel.)

On January 18, 1994, CIC filed notice of appeal from the judgment based on litigation issues. Two days later, CIC filed a motion before the trial judge to vacate the judgment under Fed.R.Civ.P. 60(b)(4), asserting that judgment was void because the lawsuit was originally filed in violation of the automatic stay. On February 1, 1994, District Judge John A. Nordberg ordered that proceedings

in the appeal be stayed pending ruling by the Magistrate Judge on the Rule 60 motion.

On April 11, 1994, Magistrate Judge Bucklo issued a memorandum opinion concluding that, because of the violation of the automatic stay by the suit filing, the October 6 judgment was void and that, if the appellate court remanded the case, she would vacate the judgment. However, she never entered an order vacating the judgment.

As discussed more fully below, there are differing authorities on the issue of whether acts in innocent violation of the stay are initially void, or simply voidable on motions that must be presented and may be denied, or are void subject to equitable considerations and laches when debtor fails to assert the stay and a creditor is ignorant of it.[4] Judge Bucklo opined that the initial suit filing was void, but did not discuss Seventh Circuit authority (discussed below) that warrants equitable relief from that result based on laches where a debtor fails to assert the stay. She has since been elevated to the District Court, and some other Magistrate Judge will likely be assigned to rule on the issue. But that has not happened yet and, when it does, the outcome cannot be predicted. As of now, the judgment still stands since Judge Bucklo did not enter an order in furtherance of her opinion.

CIC moved to remand the appeal on April 21, 1994, based on Judge Bucklo's ruling. However, that Motion is still pending before the District Court, until ruling here on the Motion filed by Jones before this Court on the same day to annul the stay. On August 22, 1994, Jones refiled his original EPPA complaint in District Court in an effort to preserve his rights if the motion here is lost and the judgment is vacated.

## DISCUSSION

### Introduction

At the outset, it must be said that this case poses a most complex problem because lawyers on both sides either did not recognize the problem or recognized it and proceeded to trial without doing anything about it. Once CIC counsel learned of the Jones suit threat, they should have noticed him about the bankruptcy and enabled him to participate therein. They did not do so. Instead, they waited until after confirmation to tell Jones about the bankruptcy, and waited until after losing the lawsuit to tell the trial judge about the bankruptcy stay.

Since CIC counsel did not inform Jones about the bankruptcy prior to confirmation, why did they do so after confirmation was ordered on March 19, 1992? Was that timing inadvertent or were they aware of a possible trap developing for Jones due to the Seventh Circuit ruling on June 13, 1991, in *Pettibone v. Easley*, 935 F.2d 120 (7th Cir. 1991) ("*Pettibone*"). That decision (discussed at length below) came down while this bankruptcy was pending and nine months before confirmation here. *Pettibone* had held that a bankruptcy judge has no authority after a Chapter 11 confirmation to annul the stay to revive a preconfirmation suit filing made in violation of the stay where non-bankruptcy limitations barred a refiling of suit. Today CIC argues that this Court lacks jurisdiction to provide an annulment remedy to Jones because the motion comes after Plan confirmation, citing *Pettibone*. Did they so believe during the litigation, and was that why they held off telling Jones until after confirmation? And why did CIC counsel fail to inform the Magistrate Judge about the bankruptcy issue before trial instead of waiting to raise it until after they had lost the jury trial? Was that due to lack of recognition of the problem? Or due to a plan to have two bites of the apple—one on the merits at trial and one on the bankruptcy issue if they lost the trial?

There are also unanswered questions about Jones's counsel. Once they learned of the confirmed bankruptcy, did they fail to recognize the potential stay issue and possible effect on the filing? If that potential problem had been recognized, a simple solution could have been to refile the same case post-confirmation and ask the Magistrate

---

**4.** See, generally, Bronson v. United States, 46 F.3d 1573, 1576–77 (Fed.Cir.1995) (and cases cited categorizing such actions as void, voidable, inval-

id, or void subject to equitable considerations and laches when debtor fails to assert stay).

Judge to try the second case. Thus, any defect in the first filing could have been mooted. Jones had several months prior to trial in which to do so after learning of the confirmation and before limitations barred refiling.

If Jones's counsel had followed that tactic, a further bankruptcy complexity would nonetheless have arisen. Ordinarily, 11 U.S.C. § 524 would bar collection efforts by Jones following confirmation (since he had not filed a timely claim and therefore could not participate in the confirmed Plan). Section 1141(d)(1) of the Bankruptcy Code states that confirmation of a plan discharges a debtor from "any debt that arose before the date of such confirmation," except as otherwise provided in the plan or the order confirming the plan. However, courts considering whether § 1141 grants a discharge of debts held by creditors with no notice of the debtor's bankruptcy case or claim bar date have held that such debt discharge would violate the Due Process Clause of the Fifth Amendment and have thus refused to permit it. *See In re Spring Valley Farms, Inc.*, 863 F.2d 832 (11th Cir.1989); *In re Dartmoor Homes, Inc.*, 175 B.R. 659, 663–64, 668–69, 669–70 (Bankr.N.D.Ill.) (Ginsberg, J.); 5 *Collier on Bankruptcy*, ¶ 1141.01 at 1141–19, n. 40 (15th ed.). Under that authority, if Jones was not informed about the bankruptcy until after confirmation, his claim would *not* be barred by § 1141 and therefore should not continue to be restrained by § 524, and he could seek collection of 100% of his claim outside of bankruptcy.

 This concept ties in closely here with the Seventh Circuit view of the impact of the automatic stay on a litigant not informed about the stay. This Circuit is among the authorities that have held actions in violation of the stay to be void, but recognizes an equitable exception, based on laches, that bars a debtor from asserting the stay if guilty of excessive delay that harms the creditors. *Matthews v. Rosene*, 739 F.2d 249, 251 (7th Cir.1984) ("debtor bears some responsibility for creating the problems" by "unreasonably and inexcusably delay[ing] asserting his claims"); *see also In re Smith Corset Shops*, 696 F.2d 971, 977 (1st Cir.1982) (debt-

or found to have remained "stealthily silent"). Here, CIC not only waited until after it lost the suit to assert the automatic stay, it did so only after non-bankruptcy limitations may have barred a refiling by Jones to avoid the stay problems.

In these circumstances, a court should consider the equitable exception under *Matthews* and *Smith* to the usual void effect of stay. The complexity here arises out of deference to the warning in *Pettibone v. Easley* of the limits to a bankruptcy judge's jurisdiction in a Chapter 11 after a plan is confirmed.

The first question here is whether, in the light of *Pettibone,* this Court has authority to resolve the issues. Does this Court have jurisdiction to consider the equitable exception to the stay's effect, and, if so, should it do so in light of the lack of any final order on that point from the Magistrate Judge? If the equitable exception does not apply, does this Court have authority to consider stay annulment?

## I. BANKRUPTCY COURT JURISDICTION TO ENTERTAIN POST–CONFIRMATION MOTION TO ANNUL AUTOMATIC STAY

 As a threshold issue, this Court must determine whether it has subject matter jurisdiction, post-confirmation but prior to entry of a final decree in a Chapter 11 case, to annul the automatic stay retroactively and/or to decide whether the equitable exception applies to bar the effect of the stay unknown to Jones. It is well established that bankruptcy judges have jurisdiction to determine the extent and validity of their own jurisdiction. *See, e.g., Hawxhurst v. Pettibone Corp.,* 40 F.3d 175, 179 (7th Cir. 1994). Subject matter jurisdiction cannot be waived and may be challenged by a party or raised *sua sponte* by the court at any point in the proceedings. *Jackson v. Consolidated Rail Corp.,* 717 F.2d 1045, 1055 (7th Cir. 1983), *cert. denied,* 465 U.S. 1007, 104 S.Ct. 1000, 79 L.Ed.2d 233 (1984).

### A. SUBJECT MATTER JURISDICTION UNDER 28 U.S.C. § 1334

At first glance, this jurisdictional issue appears straight-forward. Under the current

statutory scheme, this Court has jurisdiction over all civil proceedings (1) "arising under" title 11, (2) "arising in" a case under title 11, or "related to" a case under title 11.[5]

### 1. *"Arising Under" Jurisdiction*

 Section 1334(b) gives the district courts jurisdiction to entertain "all civil proceedings arising under title 11." Courts have read this language somewhat narrowly, however, to comply with the Constitution's federalism and separation of powers imperatives. *See Home Ins. Co. v. Cooper & Cooper, Ltd.*, 889 F.2d 746, 749 (7th Cir.1989). Thus, the fact that a claim has a distant federal origin or tenuous federal connection will not confer "arising under" jurisdiction. *See Gully v. First Nat'l Bank*, 299 U.S. 109, 118, 57 S.Ct. 96, 100, 81 L.Ed. 70 (1936); *Zerand v. Cox*, 23 F.3d at 162. "Arising under" jurisdiction will only lie where the cause of action has been created by, or must ultimately be determined by, a statutory provision of title 11. *Barnett v. Stern*, 909 F.2d 973, 981 (7th Cir.1991); *In re Spaulding & Co.*, 131 B.R. 84, 88 (N.D.Ill.1990).

The Bankruptcy Code expressly empowers this Court to annul the automatic stay, 11 U.S.C. § 362(d), and thereby provides the basis for the instant motion. Moreover, if this Court reaches the merits of this motion to annul, any resulting decision will ultimately turn on determinations of substantive issues under title 11. As discussed below, there would be need to ascertain whether "cause" exists to grant the requested annulment. When did Jones actually receive adequate notice of CIC's bankruptcy? Should

CIC have notified Jones at some earlier date? Should CIC have asserted the automatic stay effect before the Magistrate Judge prior to verdict and final judgment?

Jones's motion here arises "under" a statutory provision of title 11 U.S.C. Absent the ruling in *Pettibone*, this Court would appear to have subject matter jurisdiction under § 1334(b) to entertain Jones's Motion to Annul.

### 2. *"Arising in" Jurisdiction*

Alternatively, if the instant Motion did not invoke "arising under" jurisdiction, it would at the very least give rise to "arising in" jurisdiction. Most courts considering this issue have held such jurisdiction to encompass "administrative" matters that arise only in bankruptcy cases and have no existence outside of the bankruptcy proceeding. *See, e.g., In re Pettibone Corp.*, 135 B.R. 847, 851 (Bankr.N.D.Ill.1992) (Schmetterer, J.) (and cases cited) (This opinion was not the one reversed by the Circuit in *Pettibone v. Easley*).

Jones's motion to annul the automatic stay is clearly incident to administration of the bankruptcy estate; it could not have a separate existence outside the bankruptcy forum. Indeed, Magistrate Judge Bucklo declared as much when she noted that, although she had jurisdiction to consider the merits of Jones's EPPA claim, she did not have the requisite jurisdiction to modify or annul the automatic stay.[6] Therefore, even if it were determined that Jones's Motion did not invoke "arising under" jurisdiction, it appears this Court

---

**5.** *See, e.g., Zerand–Bernal Group, Inc. v. Cox*, 23 F.3d 159, 161–62 (7th Cir.1994). Federal district courts have original, exclusive jurisdiction over all cases under title 11, 28 U.S.C. § 1334(a) (1988), and original, non-exclusive jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11," 28 U.S.C. § 1334(b) (1988). District courts have discretionary authority to refer all matters within the jurisdictional grant of § 1334 to the bankruptcy judges. 28 U.S.C. § 157(a) (1988). Pursuant to the local rules of this District, all bankruptcy matters are automatically referred to the Bankruptcy Judges to the limits of our core and non-core jurisdiction. U.S. District Court, N.D.Ill. Local Rule 2.33(A) (1992). Bankruptcy judges may issue final orders in "core" proceedings, 28 U.S.C. § 157(b)(2), but may only submit

proposed findings of fact and conclusions of law in non-core proceedings, 28 U.S.C. § 157(c)(1).

**6.** In Judge Bucklo's own words:

Putting aside the validity or availability of this exception to the operation of the automatic stay [where the debtor allows a judicial proceeding to go forward until judgment and the attempts to use the automatic stay as a "trump card," voiding judgment], the authority to apply the exception rests with the bankruptcy court. Because this court has no authority to annul or in any way modify the automatic stay, the judgment entered in this case was in violation of it and is void.

*Jones v. CIC*, 92 C 1566, *Mem.Op.* (entered April 11, 1994).

would have "arising in" jurisdiction under § 1334(b) to entertain the motion.

### 3. *"Related to" Jurisdiction*

■ Finally, § 1334(b) grants district courts jurisdiction over "all civil proceedings ... related to cases under title 11." "Related to" jurisdiction is by far the bankruptcy's "broadest jurisdictional peg." *See Spaulding*, 131 B.R. at 88. Nevertheless, caution must be exercised when considering whether to exercise bankruptcy jurisdiction in a Chapter 11 proceeding post-confirmation. The fundamental purpose of bankruptcy law is to provide a quick, efficient resolution of claims in order to permit a debtor's business to continue or be salvaged in a timely manner, while protecting creditor interests. *Zerand–Bernal Group, Inc. v. Cox (In re Cary Metal Products, Inc.)*, 152 B.R. 927, 931 (Bankr.N.D.Ill.) (Squires, J.), *aff'd*, 158 B.R. 459 (N.D.Ill.1993), *aff'd.* 23 F.3d 159 (7th Cir.1994) (*citing In re Grabill*, 976 F.2d 1126 (7th Cir.1992)). On the one hand, it is critical that a bankruptcy court retain jurisdiction post-confirmation so that it can ensure compliance with terms of the plan of reorganization. *See Zerand v. Cox*, 158 B.R. at 463. This need must be weighed, however, against the important goal of bringing the bankruptcy process to a close at some point so that participants can go about their business without constant bankruptcy court supervision or approval. *Id.; see also In re Cinderella Clothing Indus., Inc.*, 93 B.R. 373, 376 (Bankr.E.D.Pa.1988) (citations omitted) ("Since at least 1944, courts have recognized the competing interests between retaining jurisdiction over confirmation until entry of the final decree (Bankr.R.3020) and ending the 'tutelage' status of reorganization, a period 'which may limit and hamper activities and throw doubt upon its responsibility.'").

Many opinions have sought to balance these competing interests. *See Pioneer Inv. Servs. v. Cain Partnership, Ltd. (In re Pioneer Inv. Servs.)*, 141 B.R. 635, 640–41 (Bankr.E.D.Tenn.1992) (collecting cases). In a series of opinions, the Seventh Circuit has interpreted "related to" jurisdiction narrowly, "not only out of respect for Article III but also to preserve the jurisdiction of state courts over questions of state law involving persons not party to the bankruptcy." *Home Ins. Co.*, 889 F.2d at 749; *see also In re Kubly*, 818 F.2d 643 (7th Cir.1987); *In re Xonics, Inc.*, 813 F.2d 127 (7th Cir.1987); *In re Chicago, Rock Island & Pac. R.R. Co.*, 794 F.2d 1182 (7th Cir.1986). Under these rulings, a controversy should not be deemed "related to" a bankruptcy unless its resolution will affect "the amount of property available for distribution or the allocation of property among the creditors." *Home Ins. Co.*, 889 F.2d at 749.

It is at least possible that resolution of the judgment involved here would alter payments still due other unsecured creditors. The practical effect of either finding that laches bars assertion of the stay or of an order allowing Jones's motion to annul would be to validate the $90,000.00 verdict and judgement entered in Jones's favor. *See Jones v. CIC*, 92 C 1566, *Mem. Op.*. As noted earlier, there is ample authority to find that Jones might be able to collect 100% of his judgment under the circumstances. If that is not so found, CIC's confirmed Plan provided, *inter alia*, that unsecured creditors would receive 20% of their allowed claims, in equal quarterly installment payments, over the four year period immediately following confirmation. This Court confirmed that plan on March 17, 1992 and it is now in its third year of scheduled distributions. If CIC's current cash reserves are insufficient to cover Jones's entire claim, and if Jones's claim will not be fully covered by some as yet undisclosed insurance policy held by CIC, it is at least possible that payments due under the plan to other creditors could not be paid timely or in full. However, without evidence on this subject, this Court cannot determine whether annulling the stay would somehow affect the promised distribution.

### B. *SUBJECT MATTER JURISDICTION TO ANNUL AUTOMATIC STAY POST–CONFIRMATION UNDER PETTIBONE V. EASLEY*

Based only on the foregoing, it could be reasoned that this Court has jurisdiction to entertain Jones's motion to annul, and any motion to define whether the stay effect is relieved by equity, under 28 U.S.C.

§ 1334(b). However, the jurisdictional issue is more complicated, as decided by the Seventh Circuit's decision in *Pettibone Corp. v. Easley*, 935 F.2d 120, 122–23 (7th Cir.1991), *rev'g* 110 B.R. 848 (Bankr.N.D.Ill.1990) (Schmetterer, J.). When Pettibone originally filed bankruptcy, a number of personal injury cases were pending against it. These cases were stayed automatically. 11 U.S.C. § 362. During the bankruptcy proceedings, other personal injury suits were filed in ignorance of the bankruptcy despite § 362. Those cases were put on hold pending treatment in Pettibone's reorganization. In its confirmed Plan, Pettibone listed all tort cases, including those filed post-petition, as claims that would pass through bankruptcy for litigation in other forums and be treated as allowed claims under the Plan. The post-petition personal injury claimants then had 30 days after termination of the stay upon confirmation to refile their cases if state limitations had run. 11 U.S.C. § 108(c)(2).

Three tort claimants against Pettibone knew of the bankruptcy prior to plan confirmation but failed to refile their suits within the federally-provided 30-day window. Pettibone thereafter moved this Court to enjoin future prosecution of those claims. In response, the three tort claimants asked this Court to annul the stay imposed upon all actions filed during Pettibone's bankruptcy proceeding, retroactively, in order to permit them to proceed on their original actions and thereby avoid the potential limitations issues under state law.

Ruling for the tort claimants, this Court annulled the stay so that the suits filed during Pettibone's bankruptcy would be deemed not to violate the stay and would be effective as of the date they were initially filed. 110 B.R. at 853. It was first decided that actions filed in violation of the automatic stay were void *ab initio*. *Id.* This Court then found authority in §§ 105 and 362(d) to breathe life into a void action commenced during pendency of a reorganization by annulling the stay with respect to claimants who filed suit against a debtor without knowledge of the debtor's pending bankruptcy. *Id.* at 853–56.

On appeal, the District Judge affirmed. However a Seventh Circuit panel subsequently reversed and held that this Court lacked jurisdiction to decide this issue. Noting that the 30-day window for refiling provided by federal law had expired, the panel held that the only obstacle to continuation of the three tort suits would be state statutes of limitations.[7] The panel construed Pettibone's request for injunctive relief as a request for this Court to rule on whether state statutes of limitations barred the tort claimants from refiling their previously stayed actions. After considering two possible sources of jurisdiction for this Court to consider state limitations issues, this panel concluded that neither was applicable.

The panel in *Pettibone* first determined that this Court could not exercise "related to" jurisdiction under 28 U.S.C. § 1334(b) and 11 U.S.C. § 157. Applying the test announced in *In re Xonics, et. al.,* the panel initially considered whether the dispute would affect "the amount of property available for distribution or the allocation of property among creditors." *Xonics,* 813 F.2d at 131. Under Pettibone's plan, the personal injury claimants were given rights to Debtor's insurance proceeds. *Pettibone,* 935 F.2d at 123. The panel noted that tort litigation "might affect the allocation among creditors" if payments due upon judgment in favor of the tort claimants were to exhaust policy limits, but held that they could not so determine on the record as established. *Id.*

The panel then held that "[a]t all events, § 157(c)(1) does not authorize bankruptcy judges to dispatch tort suits." *Id.* The pan-

7. *Judge Easterbrook's opinion reasoned:*
Whether Michigan or Louisiana would treat a case filed in violation of the automatic stay as a non-event for limitations purposes is a question of state law. No federal interest is in play; the bankruptcy court authorized the continued prosecution of these cases when it confirmed the plan of reorganization. Federal law assured the plaintiffs 30 days in which to pick up the baton; if states want to give plaintiffs additional time, that is their business ... A firm that has emerged from bankruptcy is just like any other defendant in a tort case: it must protect its interests in the way provided by applicable non-bankruptcy law, here by pleading the statute of limitations in the pending cases.
935 F.2d at 121–22.

el viewed this Court's exercise of jurisdiction as an attempt to assert jurisdiction over state-based personal injury claims. *Id.* However, in the wake of the Supreme Court's decision in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), Congress specifically provided that only the district courts, comprised of Article III judges, can try personal injury tort and wrongful death claims, 28 U.S.C. § 157(b)(5). *See Pettibone,* 935 F.2d at 123. The panel held that bankruptcy judges should not be permitted to try selected defenses in personal injury cases, in direct contravention of § 157(b)(5), under the guise of "related to" jurisdiction under 28 U.S.C. §§ 1334(b) and 157(c)(1). *Id.* Rather, "[t]he whole case, including defenses of all kinds, goes off to the district judge or the state court." *Id.*

The panel in *Pettibone* also considered whether this Court had jurisdiction over the limitations issue under § 1142(b) of the Bankruptcy Code. That statute authorizes the bankruptcy courts to "direct the debtor and any other necessary party ... to perform any other act ... that is necessary for the consummation of the plan." 11 U.S.C. § 1142(b). Reasoning that enjoining a tort suit specifically permitted under a plan was hardly necessary for consummation of that plan, the panel found no authority under § 1142(b) to permit this Court to exercise jurisdiction over the state claims.

Finally, the panel stated *in dicta* that they were "troubled by the idea that a judge can 'modify' something that has expired" and noted that "[e]ven legal fictions have their limits." *Pettibone,* 935 F.2d at 123. While the stay was outstanding, the panel continued, the bankruptcy judge could have modified or lifted it, perhaps backdating the effect of that decision. However once this Court authorized the prosecution of the personal injury actions, all that remained was a debate about the consequences of filing the tort action while the stay was outstanding. *Id.* As such, the bankruptcy judge lacked jurisdiction to resolve the limitations defenses, which instead had to be presented to the "proper courts." *Id.*

## C. APPLICATION OF PETTIBONE v. EASLEY TO JONES'S MOTION

If Jones's first suit filing is deemed void under 11 U.S.C. § 362, and if the pendency of his second suit were not barred by limitations, could this Court annul the stay so as to validate the judgment and render retrial unnecessary in the second suit? Under *Pettibone,* this Court must consider whether Jones's post-confirmation motion to annul could be construed as an attempt to circumvent or "end-around" the applicable statute of limitations and the question of which court can decide that issue. *Pettibone* does instruct this Court to determine whether it has jurisdiction to adjudicate limitations defenses.

### 1. Limitations Issues Under Pettibone v. Easley

On August 22, 1994, Jones filed a second complaint against CIC with the Magistrate Judge, pleading the same cause of action as did his March 3, 1992, complaint. He did so, even though he had previously filed the instant Motion, in order to protect his right to relitigate. Jones argued in his Reply Memorandum, without citing authority, that the statute of limitations under the EPPA is three years, but that the statute was tolled while the automatic stay was in effect. Jones contends that the statute of limitations expired on August 25, 1994, based on his assumption that limitations were tolled during that stay period.

The applicable statute of limitations for the EPPA appears to be three years. 29 U.S.C. § 2005(c)(2). CIC terminated Jones's employment on September 21, 1990. Therefore, the limitations period may have expired on September 21, 1993, unless limitations were otherwise tolled during CIC's bankruptcy. The Bankruptcy Code provides an extension for statutes of limitations during a bankruptcy under certain conditions:

[I]f applicable nonbankruptcy law, an order entered in a nonbankruptcy proceeding, or an agreement fixes a period for commencing or continuing a civil action in a court other than a bankruptcy court on a claim against the debtor, ... and such period has not expired before the date of

the filing of the petition, then such period does not expire until the later of—

> (1) the end of such period, including any suspension of such period occurring on or after the commencement of the case; or
>
> (2) 30 days after notice of the termination or expiration of the stay under section 362, 922, 1201, or 1301 of this title, as the case may be, with respect to such claim.

11 U.S.C. § 108(c) (1994).

 Section 108(c) prevents a debtor from filing bankruptcy in order to let the statute of limitations run and then using the expiration of the limitations period as a complete defense. *In re Morton,* 866 F.2d 561, 566 (2d Cir.1989). However, apart from the 30–day period under § 108(c)(2), this section by itself "does not provide for tolling of any externally imposed time bars ... rather, this language merely incorporates suspension of deadlines that are expressly provided in *other* federal or state statutes."[8] Therefore, the statute of limitations under the EPPA was not tolled during CIC's bankruptcy unless federal non-bankruptcy law provided for such tolling or CIC is equitably estopped from asserting limitations in the second case by reason of its conduct.[9]

During a hearing before this Court on April 28, 1994, the parties were requested to brief the effect of statutes of limitations on a cause of action under the EPPA. *Tr.* at 25–26. They have not yet provided helpful research on that subject. It appears, however, that limitations may have expired September 21, 1993 (15 days before the jury verdict against CIC in the first case), and that Jones' second lawsuit might thereby be barred under 29 U.S.C. § 2005(c)(2). Therefore, Jones's motion could be construed as an attempt to circumvent the EPPA's statute of limitations and this Court must further determine whether it has jurisdiction to adjudicate such limitations defenses.

### 2. *Jurisdiction To Decide Limitations Defenses*

 Turning again to 28 U.S.C. § 1334(b), limitations defenses in non-bankruptcy suits do not invoke "arising under" jurisdiction. Defenses such as equitable tolling or equitable estoppel are not created by a statutory provision of title 11, nor must those defenses ultimately be determined by a title 11 provision. Such defenses further do not "arise in" a case under title 11 as they clearly have existence outside of bankruptcy and are not incident to administration of the bankruptcy estate. This Court must therefore determine whether it has "related to" jurisdiction to consider the instant Motion.

At the outset, note that this Court is not faced with the precise jurisdictional dilemma

---

**8.** *Aslandis v. U.S. Lines, Inc.,* 7 F.3d 1067, 1073 (2d Cir.1993) (emphasis in original); *see, e.g., Panzella v. Hills Stores Co.,* 171 B.R. 22, 24 (E.D.Pa.1994) (§ 5535(b) of Title 42 of the Pennsylvania code provides for tolling when causes of action are stayed); *Grotting v. Hudson Shipbuilders, Inc.,* 85 B.R. 568 (W.D.Wash.1988); *In re Deicas,* 137 B.R. 51, 55 (Bankr.S.D.Cal.1992).

**9.** Even if the applicable statute of limitations has run, the doctrine of equitable estoppel might otherwise prevent CIC from asserting limitations as a complete defense. This doctrine is grafted on to all federal statutes of limitations. *Irwin v. Veterans Affairs,* 498 U.S. 89, 92–96, 111 S.Ct. 453, 456–57, 112 L.Ed.2d 435 (1990). Equitable estoppel, also called fraudulent concealment, applies when "the plaintiff has discovered ... that the defendant injured him, and denotes efforts by the defendant—above and beyond the wrongdoing upon which the plaintiff's claim is founded—to prevent the plaintiff from suing in time." *Cada v. Baxter Healthcare Corp.,* 920 F.2d 446, 451 (7th Cir.1990).

CIC did not raise the issue of violation of the automatic stay until after the statute of limitations on Jones's cause of action apparently expired under 29 U.S.C. § 2005(c)(2) and after judgment had been entered against it in the litigation. Whether the facts of this case require the application of the doctrine of equitable estoppel is an issue which has not been briefed by the parties, and no evidence has yet been taken on that subject. However, if the doctrine of equitable estoppel were to apply, then limitations would not bar Jones from bringing his second complaint. Here there are some facts that might well invoke that doctrine: CIC's apparent failure to inform Jones about the bankruptcy, or to schedule him as a creditor, or to notify him of the Plan, or to tell him about any claims bar date until after its bankruptcy Plan was confirmed. Also relevant is CIC's conduct in going forward with a jury trial consented to before the Magistrate Judge and losing the jury verdict and judgment thereon before informing that Court about the bankruptcy and the automatic stay.

highlighted in *Pettibone*. In examining "related to" jurisdiction, the *Pettibone* panel initially considered whether resolving limitations defenses would alter distributions under the plan. However, it did not resolve that issue because, on the limited record presented, it could not predict whether effectively allowing the claims would exhaust Pettibone's insurance. The panel did conclude, however, that this Court could not exercise "related to" jurisdiction because of the bar found in § 157(b)(5), preventing bankruptcy judges from adjudicating personal injury claims. Because Jones has not brought a personal injury or wrongful death action, this Court need not concern itself with the express restriction of § 157(b)(5).

■ Under the test announced in *In re Xonics, et al.*, and applied in *Pettibone*, a dispute will only be deemed "related to" a bankruptcy case when "it affects the amount of property available for distribution or the allocation of property among creditors." *Pettibone*, 935 F.2d at 123 (*quoting Xonics*, 813 F.2d at 131). The present record does not establish whether CIC has sufficient cash reserves to satisfy Jones's claim without having to alter its Plan or whether there is insurance coverage for Jones's claim. It therefore cannot be determined whether payment of Jones's judgment award (either 100% of it if CIC is estopped from asserting the stay following trial or 20% of it under the Plan) would impact allocation or distribution under CIC's confirmed Plan. Evidence would need to be taken on this issue before a ruling could be made.

## II. *JURISDICTION TO ALLOW LATE CLAIM AND MODIFY CONFIRMATION INJUNCTION*

■ If Jones's second lawsuit cannot be pursued due to limitations, then under *Pettibone* this Court has no jurisdiction to revive a dead cause of action. However, his cause is not necessarily dead, even if the second case is barred by limitations. Ordinarily,

under 11 U.S.C. § 362, a suit filed during pendency of the automatic stay, even if in ignorance of the stay, is void and does not toll limitations.[10] However, as previously discussed, that is not so if the equitable exception applies.

■ If limitations does not bar Jones from prosecuting his August 22, 1994, Complaint, then this Court is not barred by *Pettibone* from entertaining Jones's motion. But before we can reach that question, there is the threshold question of whether Jones can move to avoid the § 524 injunction against his action and/or belatedly seek to participate in Debtor's Plan. As evidenced by the Supreme Court's ruling in *Pioneer Inv. Servs. v. Brunswick Assoc.*, —— U.S. ——, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), this Court has core jurisdiction to determine whether a party should be permitted to file a late claim under Fed.R.Bankr.P. 9006(b)(1). The panel in *Pettibone* noted that, after plan confirmation, a creditor "may not come running to the bankruptcy judge every time something unpleasant happens." 935 F.2d at 122 (citations omitted). However, here in the confirmation order, this Court specifically reserved jurisdiction to enforce the Plan in all respects. *See Order Confirming Plan; see also* 11 U.S.C. § 1142(b). Under terms of the Plan, unsecured creditors will be paid over periods of four years or more. Parties in interest may indeed apply to this Court for relief relating to plan implementation. Thus, this Court has core jurisdiction under 28 U.S.C. § 157(b)(2)(B) to entertain a motion under *Pioneer* for Jones to file a late claim in order to participate in the Plan.

If Jones were allowed to file a late claim, this Court would further have core jurisdiction to enforce the Plan and deal with his late claim under the Plan. *Id.* Under recent case law of our Circuit in another *Pettibone*-related matter, this Court also has jurisdiction to prevent the injunctive effect of the confirmation order under 11 U.S.C. § 524

---

10. The Seventh Circuit has yet to decide this void/voidable issue under the current Bankruptcy Code. *York Center Park Dist. v. Krilich*, 40 F.3d 205, 207 (7th Cir.1994); *but see Matthews v. Rosene*, 739 F.2d 249, 251 (7th Cir.1984) (interpreting the similar statutory predecessor to

§ 362). However, six of the nine circuits that have ruled on this issue have held actions taken against a debtor during duration of the automatic stay to be void *ab initio*. *See Bronson*, 46 F.3d at 1577, n. 11, 12, 13.

from barring prosecution of Jones' second complaint. *See Hawxhurst v. Pettibone Corp.*, 40 F.3d 175 (7th Cir.1994).

 Under Fed.R.Bankr.P. 9006, this Court has authority to permit late filing of a prepetition claim if failure to file such claim timely "was the result of excusable neglect." [11] The issue of what constitutes "excusable neglect" was under debate for some time, but the Supreme Court recently spoke to this issue. *Pioneer Inv. Servs.*, —— U.S. ——, 113 S.Ct. 1489. In *Pioneer* the Court determined that courts must make an equitable decision as to excusable neglect, "taking account of all relevant circumstances surrounding the party's omission." *Id.* at ——, 113 S.Ct. at 1498 (footnote omitted). Such equitable decision includes consideration of the danger of prejudice to the debtor, the length of delay and its potential effect on judicial proceedings, reasons for the delay (including whether it was within the reasonable control of the movant), and whether the movant acted in good faith. *Id.*

These factors are not exclusive, however, as the Supreme Court directed lower courts to act equitably and consider all relevant circumstances. Was Jones on sufficient notice of the bankruptcy in time to refile his suit and avoid the effect of the stay before limitations had expired and the trial was held? Or do all the circumstances indicate in favor of a different conclusion? While the *Pioneer* issue has not yet been presented by the parties and no ruling can be made until that happens, it would appear that some arguments could be made to allow a late claim under that authority. In *Hawxhurst*, this Circuit in its most recent in a series of *Pettibone* decisions has held that the bankruptcy court *has* jurisdiction to consider such a request and a further request to modify the § 524 injunction, all post-confirmation.

## III. MERITS OF MOTION TO ANNUL AUTOMATIC STAY

The Bankruptcy Code does not limit changes to the automatic stay to "modification." Under § 362(d), a court may grant relief "such as by terminating, annulling, modifying or conditioning such stay." 11 U.S.C. § 362(d). The Eleventh Circuit has held that § 362(d) allows bankruptcy courts to grant retroactive relief by annulling the stay. *In re Albany Partners, Ltd.*, 749 F.2d 670, 675 (11th Cir.1984). The Eleventh Circuit explained that "[t]he word 'annulling' in this provision evidently contemplates the power of bankruptcy courts to grant relief from the stay which has retroactive effect; otherwise its inclusion, next to 'terminating', would be superfluous." 749 F.2d at 675. *See Sikes v. Global Marine, Inc.*, 881 F.2d 176, 178 (5th Cir.1989) ("The power to annul authorizes the court to validate actions taken subsequent to the impressing of the section 362(a) stay."); *Matter of Pinetree, Ltd.*, 876 F.2d 34, 38 n. 3 (5th Cir.1989) (actions taken while a creditor is ignorant of the bankruptcy stay may be validated); 2 *Collier on Bankruptcy* ¶ 362.07 (15th ed.) ("The use of the word 'annulling' permits the order to operate retroactively, thus validating actions taken by a party at a time when he was unaware of the stay.")

 When a bankruptcy judge acts to annul retroactively the automatic stay, such action may be taken only after a determination that the principles of equity require such a result because of the extraordinary circumstances in a particular case. The circumstances must indeed be extraordinary. "We acknowledge that the important congressional policy behind the automatic stay demands that courts be especially hesitant to validate acts committed during the pendency of the stay." *Albany Partners*, 749 F.2d at 675 (footnote omitted). As a Seventh Circuit panel has noted, "[s]uspension of Section 362

**11.** Fed.R.Bankr.P. 9006(b)(1) provides:
Except as provided in paragraphs (2) and (3) of this subdivision, when an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the

period enlarged if the request therefor is made before the expiration of the period originally prescribed as extended by a previous order or (2) on motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect.

automatic stay provisions may be consonant with the purposes of the Bankruptcy Act when equitable considerations weigh heavily in favor of the creditor and the debtor bears some responsibility for creating the problems." *Matthews*, 739 F.2d at 251.

A number of courts have considered whether or not to grant retroactive relief from the automatic stay for actions which were taken post-petition and violated the stay. *In re Lipuma*, 167 B.R. 522, 526 (Bankr.N.D.Ill.1994) (Wedoff, J.) (tax sale, creditors had no notice of bankruptcy, stay annulled); *Matthews*, 739 F.2d at 251 (creditor had notice, doctrine of laches required that garnishment order resulting from creditor's counterclaim in suit initiated by debtor would not be nullified since debtor had three years to assert claim against state court jurisdiction); *Richard v. City of Chicago*, 80 B.R. 451 (N.D.Ill.1987) (tax sale, creditors on debtor's schedules, equitable considerations did not require suspending the automatic stay); *In re Smith Corset Shops, Inc.*, 696 F.2d 971 (1st Cir.1982) (creditors did not have notice, debtor failed to appear at ejectment action and default judgment was issued; on strength of judgment, creditor moved debtor's inventory; court found equitable considerations dictated no recovery in conversion action by debtor).

Although there is no bright line rule, the general trend has been to evaluate two key factors: whether the creditor had notice of the bankruptcy, and how long the debtor delayed in asserting the automatic stay as a defense. *See, e.g., Lipuma*, 167 B.R. at 526 ("[T]he principles of equity support the granting of retroactive relief from the automatic stay whenever a creditor did not have actual knowledge of the applicability of the automatic stay and the creditor would be unfairly prejudiced if the debtor could raise the stay as a defense.")

We cannot finally determine without evidence whether Jones or his counsel had adequate knowledge of the bankruptcy before his case went to trial and judgment or before the limitations ran. He contends that CIC did not notify him about the bankruptcy until more than seven months after his first complaint was filed. But that appears to have been a year before the case went to trial and before limitations ran. When CIC finally attacked the validity of the complaint as a violation of the stay, the case had been tried, reduced to judgment, and was into post-judgment motions. CIC's lawyer in his letter of December 10, 1993, contends that Jones' attorney had been aware of the bankruptcy. Did that refer to the October 13, 1992, letter or something else? He also inferred that an amended schedule had just been filed to list Jones and his attorneys as creditors of the estate. The evidence and details on these matters will be considered at the forthcoming hearing.

## CONCLUSION

An old equity maxim was that "equity will not suffer a wrong to be without a remedy." *See Hecht Co. v. Bowles*, 321 U.S. 321, 329, 64 S.Ct. 587, 591–92, 88 L.Ed. 754 (1944). But, as judges, we are not freewheeling "ombudsmen" entitled to determine "wrong" by our own standards. Whether a legally recognized wrong has occurred here, and if so, whether a remedy is available to cure it, remains to be seen.

The interesting question posed by CIC's objection to the motion is whether any court has authority to grant relief, if relief is warranted. Judge Bucklo held that she (and by extension the District Judge) had no authority to annul the stay, and CIC argues that this Court has no jurisdiction to do so. If there has been a "wrong" committed by CIC in losing at trial before asserting the stay, does CIC's argument mean that *no court* has authority to right such a wrong? Or do the facts here warrant a finding involving the equitable exception to the voiding effect of the stay, thus avoiding the jurisdictional puzzle that the annulment issue raises in light of *Pettibone?*

If Jones seeks to file a late claim and/or seeks a relaxing of the § 524 injunction, this Court will have core jurisdiction to resolve issues that may impact on implementing rights under Debtor's confirmed Plan. 28 U.S.C. § 157(b)(2)(G), (O). If Jones chooses to prosecute his first complaint, he must at least first seek in this Court to be freed from

that statutory injunction resulting from the confirmation order under 11 U.S.C. § 524, based on his contention that Debtor should not now be allowed to assert the stay against him. If he seeks to prosecute the second suit, he must still seek amendment of the statutory injunction. To bring these issues to closure, he must act by a short date to be set by separate order.

If such application is filed, an evidentiary hearing will then be set thereon, combined with an evidentiary hearing on all issues pertaining to retroactive annulment of the stay, in order to resolve all issues within jurisdiction of this Court. Following that hearing, it will be decided whether there are any issues as to which this Court must defer or await District Court decision, or whether all issues raised can be decided here.

The pending motion will therefore be set for status to see whether Jones applies within the date fixed for leave to file a late claim and/or applies to relax the § 524 injunction. Following that, the evidentiary hearing will be scheduled.

Of course, Jones may always decide to follow a different course of action by asserting under authorities cited here that the new Magistrate Judge assigned to this case and the reviewing District Judge should conclude that CIC could not assert the stay following trial and that Jones has no obligation to participate in Debtor's Plan of which he was not informed until after it was a *fait accompli*. If that were found in those courts, there would be no need to seek stay annulment because CIC would be barred from belatedly asserting the stay after trial. The bankruptcy court is not the only court to recognize equitable principles and not all remedies are found here.

It is suggested that the parties inform the District Judge responsible for the appeal from judgment, and also the Magistrate Judge to whom Judge Bucklo's case was reassigned following her elevation as District Judge, of this decision and the forthcoming schedule to be set.